# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Carstens*, 2018 IL App (2d) 170183

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SUE CARSTENS, Petitioner-Appellee, and JOHN CARSTENS, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0183 |
| Filed | March 30, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 01-D-1029; the Hon. Charles W. Smith, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded with directions. |
| Counsel on Appeal | Drake James Leoris and David Drenk, of Leoris & Cohen, P.C., of Highland Park, for appellant.<br><br>Joel Ostrow, of Bannockburn, for appellee. |
| Panel | PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, John Carstens, appeals from an order of the circuit court of Lake County granting in part and denying in part his amended petition to terminate or, alternatively, reduce the maintenance awarded to his ex-wife, petitioner, Sue Carstens. We affirm in part, reverse in part, and remand with directions.

¶ 2                                    I. BACKGROUND

¶ 3    Petitioner and respondent were married in 1986. Three children were born to the parties during the marriage. The parties separated on May 7, 2001, and petitioner subsequently filed a petition for dissolution of marriage. On December 6, 2004, the trial court entered a judgment of dissolution of marriage. At the time of the dissolution, both parties were 49 years old. Petitioner worked as a full-time homemaker while respondent was employed as the chairman and chief executive officer of Libertyville Bank & Trust.

¶ 4    The judgment of dissolution incorporated a "Marital Settlement Agreement" (MSA), entered on November 30, 2004. The MSA set forth the parties' obligations with respect to various matters, including child support, maintenance, the children's college expenses, and medical insurance.[1] Regarding maintenance, the MSA provided for two "streams" of payments to petitioner. Pursuant to "Maintenance Stream #1," respondent was required to pay $5000 per month on the fifteenth day of each month, beginning on January 15, 2005, for 60 consecutive months. "Maintenance Stream #1" was subject to review upon petitioner's filing of a pleading prior to the due date of the sixtieth payment, but it was nonmodifiable by either party during the initial 60-month period. Pursuant to "Maintenance Stream #2," respondent was required to pay $750 per month on the fifteenth day of each month, beginning on January 15, 2005, through September 15, 2007. "Maintenance Stream #2" then decreased by $250 every two years until September 15, 2011, at which time all "Maintenance Stream #2" payments ceased. The MSA further provided that the amount of maintenance was based upon "[respondent's] represented gross income from all sources of approximately $277,500 per year as a base salary, bonuses, restricted stocks, dividends, stock options, warrants, mortgage referral program compensation and company extras, and upon [petitioner's] representation that she is currently a full time homemaker who has not earned any significant income from any source since the children were born."

¶ 5    On December 10, 2009, petitioner filed two petitions, including a "Petition for Increase in Maintenance and Child Support and Other Relief." On March 8, 2010, respondent filed responses to petitioner's petitions, as well as a "Petition to Terminate Maintenance." A hearing on the parties' petitions was held before Judge Jay Ukena on August 31 and September 2, 2010. On March 17, 2011, Judge Ukena issued his oral ruling, which included the following factual findings.

¶ 6    Judge Ukena noted that the parties were married on June 21, 1986, and that the judgment of dissolution of marriage was entered on December 6, 2004. Pursuant to the judgment of dissolution, petitioner received approximately 55% of the marital estate. Neither party had

---

[1]The MSA was not attached to the copy of the judgment of dissolution included in the common law record. However, a copy of the judgment of dissolution with the MSA attached was admitted into evidence as petitioner's exhibit No. 9 at the hearing on the petition at issue.

acquired any property since the judgment of dissolution. According to the parties' financial affidavits, petitioner had assets worth about $2,329,427 and respondent had assets worth approximately $1,743,355. Judge Ukena noted that, although the parties were generally in good health, petitioner had back issues, the severity of which was disputed.

¶ 7 Judge Ukena further noted that, beginning in 1996 and until his ruling in March 2011, respondent was the chairman of Libertyville Bank & Trust. Respondent's income had increased from about $272,000 per year at the time of the judgment of dissolution to an average of approximately $392,000 per year by 2010. Petitioner was unemployed at the time of the dissolution. She made efforts to seek employment and had worked part time at Williams-Sonoma, but she left the position in 2008 because she had back issues when lifting heavy items. Thereafter, petitioner remained unemployed through March 2011, except for trying to establish a small side business. Petitioner received around $60,000 per year in investment income (about the same as it was on the date of the dissolution) plus maintenance from respondent. Petitioner indicated that her back problems still limited her employability, and she submitted evidence that she still received treatment for her back. Although neither party introduced evidence as to the exact nature of the back problems, respondent agreed that the condition did affect petitioner's ability "on some level to earn income." Nevertheless, respondent opined that with "appropriate employment" petitioner could earn a minimum of $30,000.

¶ 8 With respect to the standard of living established during the marriage, Judge Ukena found that the parties' lifestyle was not lavish but rather was "commensurate with an income of $272,000 a year," which, during the marriage, was supporting a family of five. Judge Ukena also reviewed the parties' needs and concluded that each party's financial affidavit contained what "each one represents their needs to be." Judge Ukena found that respondent's present and future earning capacity was $392,000 and that petitioner's present and future earning capacity was $60,000. Judge Ukena further found that petitioner had a limited ability to earn more, because she had sacrificed development of her career and education by staying at home for the family during most of the marriage. Judge Ukena found that, by staying at home and taking care of the children, petitioner helped advance respondent's career. Judge Ukena noted that, even if he were to impute an additional $30,000 per year to petitioner's investment income of $60,000, petitioner could not "live the lifestyle of the marriage" on $90,000 per year. After considering the time petitioner would need to acquire the education, training, and employment that would allow her to be financially independent, and balancing it with the standard of living established during the marriage, Judge Ukena determined that "[i]t appears at least that [petitioner] is a candidate for indefinite maintenance."

¶ 9 On March 31, 2011, Judge Ukena entered a written order in accordance with his oral findings. Relevant to these proceedings, Judge Ukena denied respondent's petition to terminate maintenance and granted petitioner's petition for an increase in maintenance. Specifically, the order provided: "[Petitioner] is awarded indefinite maintenance of $5,000 per month commencing on the first month after entry of this Order until further Order of the court." Attached to the order was the transcript of Judge Ukena's oral findings, which were expressly incorporated in the order. Thereafter, respondent filed a motion to reconsider and a motion to reopen the proofs. Judge Ukena denied both motions, and neither party appealed Judge Ukena's rulings.

¶ 10 On February 24, 2016, respondent filed a "Verified Petition to Terminate, or Alternatively, Reduce Maintenance." On April 22, 2016, with leave of court, respondent filed an amended petition. He alleged that on or about December 11, 2015, as a result of corporate restructuring and through no fault of his own, his employment with Libertyville Bank & Trust was terminated. Concurrently with his termination, respondent entered into a "Separation Agreement and General Release" (Separation Agreement) dated December 18, 2015. Pursuant to the Separation Agreement, respondent's total gross compensation was reduced from approximately $38,667 per month to about $24,167 per month. On or about February 29, 2016, respondent accepted employment with The Private Bank. Respondent's gross pay from The Private Bank was approximately $15,500 per month. However, by virtue of having accepted full-time employment with The Private Bank, the compensation respondent had been receiving under the Separation Agreement would terminate on or about August 1, 2016. Respondent asserted that these facts demonstrated a substantial reduction of his income as a result of his termination by Libertyville Bank & Trust and thus constituted a substantial change in circumstances, warranting the termination or modification of maintenance pursuant to sections 504 and 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504, 510 (West 2016)). Respondent further asserted that, in light of the fact that he would turn 61 in May 2016 and the unlikelihood that he could procure employment similar in income to his former position with Libertyville Bank & Trust before he reaches 65, at which time he intends to retire, there had been an impairment of his future earning capacity.

¶ 11 On May 11, 2016, petitioner filed a response to respondent's amended petition. On December 12, 2016, respondent filed a motion *in limine* requesting, *inter alia*, that the trial court take judicial notice of the factual findings made by Judge Ukena in March 2011. On January 3, 2017, the trial court granted that part of the motion *in limine*. Specifically, the court stated that it would take judicial notice of "file #01 D 1029 [and] in particular the transcript of 3/17/2011."

¶ 12 A hearing on respondent's amended petition was held on January 10, 2017. Both respondent and petitioner testified at the hearing, and various exhibits, including tax returns and financial affidavits, were admitted. Respondent testified regarding his employment status. He noted that, due to a decision by management, his position with Libertyville Bank & Trust was terminated in December 2015. However, under the terms of the Separation Agreement, he received his base salary for seven additional months, until July 2016. Respondent further testified that in February 2016 he began working as a commercial banking officer for The Private Bank. Respondent earns $175,000 per year at The Private Bank plus $11,000 per year to partially offset his country club dues. Respondent testified that there is also a "chance" for a bonus. The maximum bonus he could earn would be 40% of his base salary of $175,000. After July 2016, respondent's only source of income was his salary from The Private Bank. Respondent testified that he is paid twice a month at The Private Bank. He identified a check stub from November 30, 2016, showing that his gross salary each pay period is $7750 and that his net pay is $4805. Respondent testified that based on his new salary and after paying his monthly expenses, including petitioner's maintenance of $5000 per month, he has a monthly deficit of $2612.

¶ 13 Petitioner testified that she is not employed and that she has not tried to find employment since 2011. She stated that her back problems prevent her from seeking gainful employment. Petitioner testified that her monthly income is $7268, which consists of $2268 in dividend

income and $5000 in maintenance from respondent. Petitioner stated, however, that the dividends she receives are reinvested and that the maintenance she receives is insufficient to cover her monthly expenses. Petitioner testified that her monthly expenses total about $12,000. This includes about $2900 per month toward expenses of the parties' three children, who are emancipated and reside outside of petitioner's home. As a result, petitioner has a monthly deficit of $6058.[2] Petitioner testified that she makes up for the monthly shortfall out of her "asset accounts." Petitioner explained that she receives an automatic withdrawal of $5000 per month from one of her asset accounts, although she periodically makes additional withdrawals. In 2015, for instance, petitioner took out a total of $99,000 from her asset accounts. Petitioner testified that, as a result of the withdrawals, the value of these accounts decreased by about $120,000 between December 2014 and November 2016. Petitioner acknowledged that, if she did not provide for the children, her monthly expenses would be about $9000.

¶ 14    Following the hearing, the trial court ordered the parties to submit written closing arguments. On February 3, 2017, petitioner filed a "Petition for an Award of Attorneys' Fees and Costs and for Other Relief." On February 9, 2017, petitioner filed an "Amended Petition for an Award of Attorneys' Fees and Costs and for Other Relief." On February 17, 2017, petitioner filed a "Motion to Strike and Dismiss Respondent's Reply Brief and for Other Relief."

¶ 15    On February 23, 2017, after receiving the parties' closing arguments, the trial court issued its ruling. The court denied respondent's request for a termination of maintenance, but it granted his request for a reduction of maintenance. In so finding, the court, citing *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, initially determined that Judge Ukena's March 31, 2011, order, which awarded petitioner "indefinite maintenance" of $5000 per month until further order of the court, was the "law of the case" because the order constituted a final judgment and neither party took an appeal therefrom. Accordingly, the court stated that it would not alter that order's provisions classifying the maintenance award as "indefinite."

¶ 16    Next, the court reviewed the maintenance award in light of the factors set forth in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)). The court focused on whether respondent established a "substantial change in circumstances" in his ability to pay maintenance. The court also considered the length of the marriage and the number of years that respondent had been paying maintenance. The court found that respondent did not present any evidence that petitioner's employability had changed since 2011. In addition, the court reviewed the parties' financial affidavits and noted that, since 2011, the value of respondent's assets had increased while the value of petitioner's assets had decreased. Ultimately, however, the court determined that respondent had established a substantial change in circumstances, based principally upon his change in employment. In this regard, the court determined that respondent's termination from his employment at Libertyville Bank & Trust "was not voluntary" and that the difference between respondent's salary at Libertyville Bank & Trust

---

[2]Petitioner's June 27, 2016, financial affidavit, which was admitted into evidence, shows a gross monthly income of $7268 less monthly deductions for taxes of $1017, resulting in a net monthly income of $6251. The financial affidavit also shows monthly living expenses and debt payments of $12,309. Petitioner's net monthly income of $6251 minus her monthly living expenses and debt payments results in a monthly deficit of $6058.

and his salary at The Private Bank met the definition of a "substantial change in circumstances" so as to qualify for a modification of his maintenance obligation. See 750 ILCS 5/510(a-5)(1) (West 2016).

¶ 17 The court then turned again to the issue of the duration of the maintenance award, rejecting respondent's argument that the guidelines in section 504(b-1)(1)(B) of the Act (750 ILCS 5/504(b-1)(1)(B) (West 2016)) require the termination of his obligation to pay maintenance. The court cited two reasons for this finding. First, the court stated that the guidelines as to the duration of a maintenance award do not apply when there has been an award of permanent or indefinite maintenance. Second, citing *In re Marriage of Cole*, 2016 IL App (5th) 150224, the court found that the guidelines were inapplicable because they were added to section 504 pursuant to an amendment that became effective in January 2016 and "the amendment to Section 504 [of the Act] represents a substantive change to the law and not a procedural change." As to the amount of the maintenance award, the court observed that a new method for calculating the amount also became effective in January 2016. See 750 ILCS 504(b-1)(1)(B) (West 2016). The court stated that, although this change was substantive and the court was therefore not bound by the change, it nevertheless considered the new calculation formula to be a guideline "as to what is equitable and just." Accordingly, the court used the new calculation method as a template and reduced respondent's maintenance obligation to $4196.40 per month with a commencement date of March 1, 2017. In addition, the court ordered respondent to pay as maintenance 30% of any income above his base salary and country club allowance, totaling $186,000.

¶ 18 On February 24, 2017, the trial court disposed of petitioner's "Motion to Strike and Dismiss Respondent's Reply Brief and for Other Relief." Specifically, the court found that respondent's reply brief violated local court rules. Nevertheless, the court observed that it read and considered respondent's reply brief before receiving petitioner's motion and that it considered the reply brief in its ruling. In the same order, the court stated that its ruling constituted a final and appealable order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). On March 2, 2017, the court entered an agreed order pursuant to which petitioner withdrew her "Amended Petition for an Award of Attorneys' Fees and Costs and Other Relief." On March 7, 2017, respondent filed a notice of appeal.

¶ 19                                                    II. ANALYSIS

¶ 20 On appeal, respondent raises two assignments of error. First, respondent disputes the trial court's finding that Judge Ukena's award of "indefinite maintenance" constituted the law of the case. Second, respondent argues that the trial court erred in finding that the guidelines as to the duration of a maintenance award, set forth in section 504(b-1) of the Act (750 ILCS 5/504(b-1) (West 2016)), do not apply to this case. We address each contention in turn.

¶ 21                                               A. The Law of the Case

¶ 22 Respondent first contends that a maintenance award may be modified if the petitioning party establishes a substantial change in circumstances. See 750 ILCS 5/510(a-5) (West 2016). Thus, respondent asserts, the trial court erred as a matter of law when it found itself bound, pursuant to the law-of-the-case doctrine, by Judge Ukena's award of "indefinite maintenance." Petitioner does not dispute that "the law of the case doctrine would not bar [respondent] from

- 6 -

relitigating" the facts pertaining to the duration of maintenance, but she asserts that respondent did not present any evidence that termination of indefinite maintenance was warranted.

¶ 23 "[T]he law-of-the-case doctrine generally bars relitigation of an issue previously decided in the same case." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31. Pursuant to the doctrine, questions decided on a previous appeal are binding on both the trial court on remand and the appellate court on subsequent appeals. *Norris v. National Union Fire Insurance Co. of Pittsburgh, PA*, 368 Ill. App. 3d 576, 580 (2006). A prerequisite to the application of this doctrine is that there has been a prior appeal. See *Norris*, 368 Ill. App. 3d at 580 ("Under the law of the case doctrine, *questions of law decided on a previous appeal* are binding on the trial court on remand as well as on the appellate court on a subsequent appeal." (Emphasis added.)); *Marsaw v. Richards*, 368 Ill. App. 3d 418, 425 (2006) ("The 'law of the case' doctrine provides that an issue of law that was *decided on appeal* is binding on the circuit court on remand and on the appellate court on subsequent appeal." (Emphasis added.)); *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 649 (1996) ("The parties and issues to this appeal are *the same as in the first appeal*, so the law-of-the-case doctrine requires that we affirm ***." (Emphasis added.)); Black's Law Dictionary 893 (7th ed. 1999) (defining "law of the case" as "[t]he doctrine holding that a decision rendered *in a former appeal* of a case is binding in a later appeal" (emphasis added)). In this case, the law-of-the-case doctrine does not apply because neither party appealed Judge Ukena's March 31, 2011, order awarding petitioner indefinite maintenance.

¶ 24 Moreover, even if we were to assume that the law-of-the-case doctrine applies, this court has observed that the doctrine does not preclude a trial court from reconsidering an earlier order if the facts before the court have changed or if an error or injustice must be remedied. *In re Marriage of Connors*, 303 Ill. App. 3d 219, 224 (1999) (citing *People v. Williams*, 138 Ill. 2d 377, 392 (1990)). Furthermore, in *Connors*, we found that the application of the law-of-the-case doctrine, so as to preclude a trial court's authority to hear and rule upon a petition for a modification of maintenance, was irreconcilable with the Act's direct mandate, which provides that "any judgment" is subject to modification in certain circumstances. *Connors*, 303 Ill. App. 3d at 224-25 (citing 750 ILCS 5/510(a) (West 1996)); see also 750 ILCS 5/510(a-5) (West 2016) ("An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances."); *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 15 (rejecting notion that law-of-the-case doctrine precluded court from modifying award of "permanent" maintenance, noting that court was free to review or terminate maintenance as long as there had been a substantial change in circumstances). Consequently, we find that, irrespective of how Judge Ukena classified the maintenance award in his March 31, 2011, order, a subsequent court is not precluded from modifying the award where a party establishes a substantial change in circumstances. 750 ILCS 5/510(a-5) (West 2016); *Bernay*, 2017 IL App (2d) 160583, ¶ 15; *Connors*, 303 Ill. App. 3d at 225; see also *In re Marriage of Mittra*, 114 Ill. App. 3d 627, 633-35 (1983) (indefinite award of maintenance is subject to modification); *In re Marriage of Bramson*, 100 Ill. App. 3d 657, 659 (1981) (same).

¶ 25 In so finding, we observe that Judge Ukena's March 31, 2011, order expressly provided that the award of "indefinite maintenance of $5,000 per month" would stand "until further [o]rder of the court." Thus, Judge Ukena himself clearly contemplated that the order could be modified. In finding that the law-of-the-case doctrine precluded it from modifying the order's provisions classifying the maintenance award as "indefinite," the trial court relied on *Radwill*.

We find the trial court's reliance on *Radwill* somewhat puzzling in that *Radwill* did not involve the application of the law-of-the-case doctrine in the context of a maintenance award. Additionally, the trial court's February 23, 2017, order is inconsistent in the application of the law-of-the-case doctrine. In this regard, we observe that, although the trial court determined that it was bound by the law-of-the-case doctrine and therefore declined to modify the *duration* of the maintenance award, it nevertheless reduced the *amount* of the award. The trial court provided no rationale for applying the law-of-the-case doctrine as to the duration of the maintenance award but not as to the amount. More important, in light of the foregoing authority, we agree with respondent that the trial court erred in finding that the law-of-the-case doctrine precluded it from modifying the duration of the maintenance award. Petitioner asserts that respondent did not present any evidence that termination of indefinite maintenance was warranted. However, since the trial court did not address the issue of duration, we decline to decide whether the evidence was sufficient to warrant a modification of the duration of the maintenance award and instead we remand this cause for the trial court to address the matter.

¶ 26                           B. Applicability of Duration Guidelines[3]

¶ 27     Next, respondent contends that the trial court erred in finding that section 504(b-1)'s guidelines for calculating the duration of a maintenance award did not apply in this case. Respondent asserts that, as a result of this alleged error, this cause must be remanded for the trial court to consider the duration of the maintenance award in light of the guidelines set forth in section 504(b-1). Because the applicability of section 504(b-1) will undoubtedly arise on remand, we consider the issue now.

¶ 28     To address respondent's argument, we must engage in statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 26. The best indicator of the legislature's intent is the plain language of the statute. *Benink*, 2018 IL App (2d) 170175, ¶ 26. " 'When the statute's language is clear, it will be given effect without resort to other aids of statutory construction.' " *Benink*, 2018 IL App (2d) 170175, ¶ 26 (quoting *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003)). The rules of statutory construction also require us to read the statute as a whole and reconcile all relevant language so as not to render any portion of the statute meaningless or void. See *DeLuna v. Burciaga*, 223 Ill. 2d 49, 60 (2006) ("A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute."). Issues of statutory construction are subject to *de novo* review. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 31.

¶ 29     Section 504(b-1) of the Act (750 ILCS 5/504(b-1) (West 2016)) governs the amount and duration of a maintenance award. That provision was added to the Act in 2015 as part of Public Act 98-961 (Pub. Act 98-961, § 5 (eff. Jan. 1, 2015) (amending 750 ILCS 5/504)). Section 510 of the Act (750 ILCS 5/510 (West 2016)) governs the modification and termination of maintenance, among other matters. Before respondent filed the petition at issue, various provisions of the Act, including sections 504 and 510, were amended as part of Public Act

---

[3]Respondent does not challenge the amount of maintenance awarded by the trial court, so we do not address that issue in this appeal.

99-90 (Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (amending 750 ILCS 5/504, 510)). Public Act 99-90 also amended section 801 of the Act. Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (amending 750 ILCS 5/801). As amended by Public Act 99-90, section 801 provides in relevant part as follows:

"(a) This Act applies to all proceedings commenced on or after its effective date.

(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act.

(c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801 (West 2016).

This court recently held that section 801(c), as amended by Public Act 99-90, applies to modification proceedings filed after January 1, 2016. *Benink*, 2018 IL App (2d) 170175, ¶ 27. In this case, respondent filed his original petition to terminate or reduce maintenance on February 24, 2016, and his amended petition on April 22, 2016. Thus, both petitions were filed after the effective date of Public Act 99-90. The amended petition sought the modification of Judge Ukena's March 31, 2011, order, an order entered prior to the effective date of Public Act 99-90. As such, respondent's amended petition clearly fell within section 801(c). As a result, the changes effectuated by Public Act 99-90 govern these proceedings. *Cf. Benink*, 2018 IL App (2d) 170175, ¶ 29 (holding that changes effectuated by Public Act 99-90 did not apply to parties' petitions for modification of child support where the petitions were filed prior to January 1, 2016).

¶ 30   Section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)) provides that an order for maintenance may be modified or terminated "only upon a showing of a substantial change in circumstances." A "substantial change in circumstances" for purposes of section 510(a-5) means that there has been a change to either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance. *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 132; *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011); see also *Bernay*, 2017 IL App (2d) 160583, ¶ 18 (noting that a substantial change in circumstances occurs when the payee's needs significantly decrease or the payor is no longer able to pay). When determining whether a substantial change in circumstances has occurred such that the termination or modification of maintenance is appropriate, section 510(a-5) directs the court to consider the nine factors set forth in section 510(a-5) and the applicable factors listed in section 504(a) of the Act (750 ILCS 5/504(a) (West 2016)). 750 ILCS 5/510(a-5) (West 2016).

¶ 31   The factors in section 504(a) are intended to assist the court in determining "whether a maintenance award is appropriate." 750 ILCS 5/504(a) (West 2016). If the court determines that a maintenance award is "appropriate," it must set the amount and duration of the award in accordance with section 504(b-1), which provides:

"(b-1) Amount and duration of maintenance. If the court determines that a maintenance award is appropriate, the court shall order maintenance in accordance with either paragraph (1) or (2) of this subsection (b-1):

(1) Maintenance award in accordance with guidelines. In situations when the combined gross income of the parties is less than $250,000 and the payor has no

obligation to pay child support or maintenance or both from a prior relationship, maintenance payable after the date the parties' marriage is dissolved shall be in accordance with subparagraphs (A) and (B) of this paragraph (1), unless the court makes a finding that the application of the guidelines would be inappropriate.

(A) The amount of maintenance under this paragraph (1) shall be calculated by taking 30% of the payor's gross income minus 20% of the payee's gross income. The amount calculated as maintenance, however, when added to the gross income of the payee, may not result in the payee receiving an amount that is in excess of 40% of the combined gross income of the parties.

(B) The duration of an award under this paragraph (1) shall be calculated by multiplying the length of the marriage at the time the action was commenced by whichever of the following factors applies: 5 years or less (.20); more than 5 years but less than 10 years (.40); 10 years or more but less than 15 years (.60); or 15 years or more but less than 20 years (.80). For a marriage of 20 or more years, the court, in its discretion, shall order either permanent maintenance or maintenance for a period equal to the length of the marriage.

(2) Maintenance award not in accordance with guidelines. Any non-guidelines award of maintenance shall be made after the court's consideration of all relevant factors set forth in subsection (a) of this Section." 750 ILCS 5/504(b-1) (West 2016).[4]

Thus, reading the statute as a whole, the court must review the factors in section 510(a-5) and the applicable factors in section 504(a) to determine whether a substantial change in circumstances has occurred. 750 ILCS 5/510(a-5) (West 2016). If, after reviewing the relevant factors, the court concludes that the modification of a maintenance award is "appropriate," it must proceed to section 504(b-1) and set an award in accordance with the guidelines in paragraph (1) of subsection (b-1) or set a nonguideline award in accordance with paragraph (2) of subsection (b-1). If the court deviates from the guidelines set forth in section 504(b-1)(1), however, it is required to "state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning for any variance from the guidelines." 750 ILCS 5/504(b-2)(2) (West 2016).

¶ 32     In this case, the trial court concluded that respondent established a substantial change in circumstances warranting the modification of the maintenance awarded to petitioner. Accordingly, it reduced the amount of the maintenance award. However, the court refused to assess whether the duration of the maintenance award should be modified, citing the law-of-the-case doctrine. As noted above, this was error. The court also indicated that, even if it were to review the duration of the maintenance award, it would not apply the provisions of section 504(b-1). The court cited two reasons for this. First, the court found that the section 504(b-1) guidelines as to the duration of maintenance do not apply when there has been an award of permanent or indefinite maintenance. Second, relying on *Cole*, the court concluded that the section 504(b-1) guidelines as to the duration of maintenance were inapplicable

---

[4]The trial court in this case determined that respondent's salary and country club allowance was $186,000 and that petitioner's dividend income was $27,216. Thus, for purposes of section 504(b-1)(1), the parties' combined gross income ($213,216) was less than $250,000.

because they represented a substantive change to the law. We find the court's rationales flawed.

¶ 33 Initially, we observe that the trial court cited no authority for the proposition that the section 504(b-1) guidelines as to the duration of maintenance do not apply when there has been an award of permanent or indefinite maintenance. Further, this finding is contrary to section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)), which expressly provides that an order for maintenance may be modified or terminated upon a showing of a substantial change in circumstances. See also *Bernay*, 2017 IL App (2d) 160583, ¶ 15 (noting that trial court was "free to review or terminate" award of permanent maintenance, provided there had been a substantial change in circumstances); *Mittra*, 114 Ill. App. 3d at 633-35 (indefinite award of maintenance is subject to modification); *Bramson*, 100 Ill. App. 3d at 659 (same). In addition, the trial court's reliance on *Cole* is misplaced. In *Cole*, the court addressed the applicability of the maintenance guidelines enacted by Public Act 98-961. See Pub. Act 98-961, § 5 (eff. Jan. 1, 2015) (amending 750 ILCS 5/504). During the course of its analysis, the court determined that these guidelines were substantive and thus could not be applied retroactively. *Cole*, 2016 IL App (5th) 150224, ¶¶ 7-8. However, the principal issue in *Cole* was whether the guidelines applied to a proceeding in which the marriage, separation, and dissolution hearing all occurred in 2014, before the amended statute took effect, but the trial court did not render its decision until 2015, after the amended statute took effect. Under these circumstances, the *Cole* court held that the amended statute did not apply. *Cole*, 2016 IL App (5th) 150224, ¶ 9. The court explained that, because "[a]ll of the events that shaped the trial court's opinion in formulating its ruling occurred in 2014," "[t]he mere fact that the matter was taken under advisement but not ruled on until 2015, after the effective date of the new statute, does not warrant retroactive application of the law." *Cole*, 2016 IL App (5th) 150224, ¶ 9. Of note, neither the *Cole* court nor the trial court in this case addressed the impact, if any, of section 801 of the Act (750 ILCS 5/801 (West 2016)). See *Cole*, 2016 IL App (5th) 150224, ¶ 8 ("[i]f a new statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect").

¶ 34 Petitioner argues that section 504(b-8) of the Act (750 ILCS 5/504(b-8) (West 2016)) applies to bar application of the section 504(b-1) guidelines as to the duration of maintenance (750 ILCS 5/504(b-1) (West 2016)). Section 504(b-8) provides as follows:

> "(b-8) Upon review of any previously ordered maintenance award, the court may extend maintenance for further review, extend maintenance for a fixed non-modifiable term, extend maintenance for an indefinite term, or permanently terminate maintenance in accordance with subdivision (b-1)(1)(A) of this Section." 750 ILCS 5/504(b-8) (West 2016).

According to petitioner, had the legislature intended the duration guidelines to apply to a modification proceeding, it would have expressly referenced subsection (b-1)(1)(B) of section 504 in subsection (b-8) of section 504. We decline to address the merits of petitioner's argument. Subsection (b-8) was added to section 504 as part of Public Act 99-763 (Pub. Act 99-763 (eff. Jan. 1, 2017) (amending 750 ILCS 5/504)). Public Act 99-763 did not become effective until January 1, 2017, months after respondent filed his amended petition. Petitioner cites no authority that this amendment applies to a petition filed prior to its effective date.

¶ 35 Petitioner also argues that it would be "both absurd and unjust for the legislature to suddenly subject every recipient of permanent or indefinite maintenance in Illinois who has

been paid for longer than the length of their marriage, and who has planned their lives in accordance with the judgment or order a court afforded them, to the adverse rebuttable presumption that their maintenance should be terminated." However, the statute does not require the application of the duration guidelines. As noted above, if the trial court determines that the application of the guidelines would be inappropriate, it may set a "non-guidelines award of maintenance" after considering all relevant factors in section 504(a) of the Act (750 ILCS 5/504(a) (West 2016)). 750 ILCS 5/504(b-1)(2) (West 2016).

¶ 36 In short, we agree with respondent that the trial court erred in determining that the provisions of section 504(b-1) do not apply in assessing the duration of petitioner's maintenance award. Thus, we remand the matter for the trial court to assess whether the duration of the maintenance award should be modified in accordance with the provisions of section 504(b-1). We observe, however, that the trial court is not bound by the section 504(b-1) guidelines as to duration. Rather, if the court determines that the application of the guidelines "would be inappropriate" (750 ILCS 5/504(b-1)(1) (West 2016)), it may assess the duration of the maintenance award in accordance with subsection (b-1)(2) (750 ILCS 5/504(b-1)(2) (West 2016)). However, if the court does deviate from the guidelines set forth in section 504(b-1), it shall make findings in accordance with section 504(b-2)(2). See 750 ILCS 5/504(b-2)(2) (West 2016) (providing that, if the court deviates from the guidelines in making a maintenance award, "it shall state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning for any variance from the guidelines"). We offer no opinion as to whether the duration of maintenance in this case should accord with the section 504(b-1) guidelines, whether a nonguideline analysis pursuant to section 504(b-1)(2) should occur, or whether the duration of the maintenance award should even be modified.

¶ 37                                   III. CONCLUSION

¶ 38 For the reasons set forth above, we reverse that portion of the judgment of the circuit court of Lake County declining to address, pursuant to the law-of-the-case doctrine, the propriety of the duration of petitioner's maintenance award and concurrently finding that the provisions of section 504(b-1) do not apply to this case. This cause is remanded to the trial court for the limited purpose of addressing the duration issue pursuant to section 504(b-1). The remainder of the trial court's order, including the reduction in the amount of the maintenance award, is affirmed.

¶ 39 Affirmed in part and reversed in part.

¶ 40 Cause remanded with directions.