2020 IL App (2d) 190929
No. 2-19-0929
Opinion filed December 29, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| DAVID WIG, | ) | of Du Page County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 17-D-1444 |
| | ) | |
| JUDITH WIG, n/k/a Judith Progo, | ) | Honorable |
| | ) | Timothy J. McJoynt, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    The marriage of petitioner, David Wig, and respondent, Judith Wig, n/k/a Judith Progo, was dissolved in August 2018. Incorporated into the dissolution judgment was the parties' marital settlement agreement. The agreement provided a calculation to determine the amount of maintenance that respondent would pay petitioner. The agreement also provided that, if a change in the law affected the tax consequences of the maintenance ordered in the agreement, the parties could negotiate a change in the agreement. If those efforts failed, the parties would submit the matter to the trial court for resolution. A few days after the parties' marriage was dissolved, respondent lost her job. In September 2018, under the terms of the dissolution judgment, petitioner submitted a qualified domestic relations order (QDRO) to his former employer. Garnishment of

petitioner's pension began in October 2018. Respondent obtained new employment in November 2018, and in December 2018, petitioner moved to set maintenance. Effective January 1, 2019, section 504(b-1)(1)(A) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(b-1)(1)(A) (West 2018)) (the 2019 version) was amended as to its formula for the initial setting of maintenance.[1] The former version of section 504(b-1)(1)(A) was added by Public Act 100-520, § 15 (eff. Jan. 1, 2018) and is found in the 2017 supplement to West's Illinois Compiled Statutes (the former version) (see 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017)).

¶ 2    In February 2019, the QDRO concerning petitioner's pension was entered in the trial court. Thereafter, the parties disagreed over which version of section 504(b-1) the trial court should apply in setting the specific dollar amount of maintenance. The court chose the 2019 version but applied the provision on modification of maintenance, rather than the provision governing the initial setting of maintenance. Compare 750 ILCS 5/504(b-1)(1)(A-1) (West 2018) with *id.* § 504(b-1)(1)(A).

¶ 3    Respondent timely appeals from that order.[2] For the reasons that follow, we affirm.

_____

[1] The section amended by Public Act 100-923, § 10 (eff. Jan. 1, 2019) is found in the 2018 version of West's Illinois Compiled Statutes.

[2] Respondent initially appealed while other matters remained pending in the trial court. Those matters have since been resolved, allowing us now to exercise jurisdiction over this appeal. See *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1050 (2007) (if the trial court's jurisdiction has lapsed, such that it is too late to file a timely notice of appeal, the appellant may invoke the savings provision of Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017), and the appellate court will give effect to the appellant's premature notice of appeal once the last pending claim is

¶ 4                                     I. BACKGROUND

¶ 5     After almost 29 years of marriage, the parties' marriage was dissolved. The agreement incorporated into the August 22, 2018, dissolution judgment stated the parties' annual incomes, divided the parties' marital assets and debts, and provided petitioner with maintenance. Concerning the parties' incomes, the agreement indicated that respondent earned an annual salary of $54,000 and that petitioner, who was retired, received $19,260 in annual social security benefits and $18,123.96 in annual pension benefits. The parties' marital property and debts, which were not large, were divided essentially equally. The section of the agreement addressing maintenance provided:

>    "(a) Beginning immediately upon [respondent] receiving pension benefits from [petitioner's] pension (pursuant to QDRO), [respondent] shall pay maintenance to [petitioner] pursuant to statutory guidelines, subject to the 40% cap, based upon the following formula: Thirty percent (30%) of [respondent's] gross income, inclusive of benefits received from [petitioner's] pension minus twenty percent (20%) of [petitioner's] gross income, inclusive of Social Security benefits and pension benefits received by [petitioner] (exclusive of pension benefits paid to [respondent]). *** Upon entry of the QDRO dividing [petitioner's] pension, the attorneys for the parties shall immediately determine the parties' incomes and the dollar amount of maintenance and enter an order setting the dollar amount of maintenance.

>    (b) Payments for maintenance shall be modifiable upon a showing of a substantial change in circumstances.

---

resolved).

* * *

*** It is agreed and understood by the parties that all of the payments made by [respondent] to [petitioner] pursuant to this [s]ection *** of this [a]greement shall constitute maintenance payments which are imposed on or incurred by [respondent] under a written instrument within the meaning of Section 71 of the Internal Revenue Code, as amended, and as of now in effect, and of similar provisions of future laws, and that such payments will be includable in [petitioner's] gross income and deductible by [respondent] for federal, state, and local (if any) tax purposes. Inasmuch as this [a]greement has been negotiated and executed on the assumption that the payments made by [respondent] to [petitioner] pursuant to this [s]ection *** of this [a]greement will be deductible by [respondent] and taxable to [petitioner], if any or all of such payments are not so includable and deductible as a result of a final and binding judicial or administrative determination, or because of amendment or repeal of the applicable statutory provisions or their authoritative interpretation, then any such payment(s) otherwise due [petitioner] pursuant to this [s]ection *** of this [a]greement may be adjusted by an amount to be negotiated by the parties. In the event that the parties are unable to agree upon a readjustment of these provisions to take account of the changed tax impact, then this matter shall be submitted to the [trial court] for final and binding determination of the payments from [respondent] to [petitioner]."

¶ 6 The 30%-20% calculation in the agreement mirrored the formula in the former version of section 504(b-1)(1)(A) of the Act for the initial setting of maintenance. See 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017).

¶ 7    Ten days after the parties' marriage was dissolved, respondent was fired from her job. At the end of September 2018, petitioner delivered the required QDRO to his former employer. In the beginning of October 2018, petitioner's former employer began garnishing petitioner's pension. At the end of November 2018, respondent obtained new employment, with an annual income of $53,000. On December 11, 2018, after learning that respondent had obtained new employment, petitioner petitioned to set the dollar amount of maintenance.

¶ 8    Effective January 1, 2019, before the trial court's hearing on the petition to set maintenance, section 504 was amended in two respects pertinent here. First, an amendment to section 504(b-1)(1)(A) (750 ILCS 5/504(b-1)(1)(A) (West 2018)) altered the formula for the initial setting of maintenance. This amendment was in response to a change in federal law that eliminated the deductibility of maintenance for federal tax purposes. See Pub. L. No. 115-97, 131 Stat. 2089 (2017) (repealing 26 U.S.C. § 71).

¶ 9    Second, section 504(b-1)(1)(A-1) (750 ILCS 5/504(b-1)(1)(A-1) (West 2018)) was added. This section provided that the 30%-20% formula in the former version for the initial setting of maintenance (which, again, was mirrored in the parties' agreement) would generally apply to "[m]odification of maintenance orders entered before January 1, 2019, that are and continue to be eligible for inclusion in the gross income of the payee for federal income tax purposes and deductible by the payor." *Id.*

¶ 10    On January 9, 2019, after the 2019 version of section 504 of the Act went into effect, respondent answered the petition to set the dollar amount of maintenance. Respondent asserted that she had not received any of petitioner's pension benefits to which she was entitled. The trial court continued the proceedings for the entry of the QDRO. On February 5, 2019, the QDRO was

entered in court. On April 1, 2019, respondent began receiving her share of petitioner's pension pursuant to the QDRO.

¶ 11    At the hearing on the petition, the parties disagreed over whether the former or 2019 version of section 504(b-1) applied to the calculation of maintenance. The parties did agree that, under the former version, petitioner would receive $423 in monthly maintenance, but under the 2019 version, he would receive only $3 in monthly maintenance. Petitioner asked the court to apply the agreement's maintenance formula, which, in effect, would be to apply the former version of section 504 because the agreement's formula was borrowed from that version. See 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). Petitioner also noted that applying the 2019 version of the Act would leave him with an absurdly small amount of maintenance. Respondent urged the court to apply the 2019 version of section 504.

¶ 12    The trial court held that our decision in *In re Marriage of Carstens*, 2018 IL App (2d) 170183, required the court to apply the 2019 version of section 504. The court then considered whether to follow section 504(b-1)(1)(A), which governed the initial setting of maintenance, or section 504(b-1)(1)(A-1), which governed the modification of maintenance. The court decided to apply section 504(b-1)(1)(A-1), reasoning that this was "the better move" because "that's what [the parties] intended and [the court has] to give credence *** to the *** agreement." The court continued:

"[I]f the IRS says no, you're back, *** then it would seem to me the only alternative left for this Court is to apply [section 504(b-1)(1)(A)] of the maintenance statute, which provides for a formula without deductibility and deals with that income, but that's for another day and maybe a day we don't have to worry about if the IRS goes along with this provision."

¶ 13    In October 2019, the trial court, in line with its decision, awarded petitioner $423 in monthly maintenance. The court also ordered that respondent pay petitioner $705.87. This sum represented the difference between $5076 in retroactive maintenance owed to petitioner from October 1, 2018, to October 1, 2019, and respondent's right to $4370.13 in pension benefits accrued between October 1, 2018, and April 1, 2019.

¶ 14                                    II. ANALYSIS

¶ 15    At issue in this appeal is what law governs the calculation of maintenance that petitioner sought in his December 2018 petition. This issue involves contract and statutory construction, both of which are pure questions of law that we review *de novo*. *In re Application of the County Treasurer & ex officio County Collector of Kane County*, 2018 IL App (2d) 170418, ¶ 22. Moreover, we may affirm the judgment of the trial court on any basis found in the record. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 16    As we explain below, the change in the law did not affect the parties' agreement. Under section 502(b) of the Act (750 ILCS 5/502(b) (West Supp. 2017)), the agreement is enforceable because neither party argued, nor did the trial court find, that the agreement is unconscionable. The agreement provides unambiguous terms for the calculation of maintenance. Because petitioner asked the trial court to set maintenance under that formula rather than to modify the agreement, the agreement controls exclusive of statutory provisions on maintenance.

¶ 17    Before we address the agreement, we acknowledge the relevant differences between the former and 2019 versions of section 504(b-1). The versions differ on how to set guideline maintenance, which is an award of maintenance based on the Act's delineated calculations. 750 ILCS 5/504(b-1)(1)(A) (West 2018); 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). The former version of section 504(b-1)(1)(A) provides that "[t]he amount of [guideline] maintenance *** shall

be calculated by taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). The 2019 version of section 504(b-1)(A) changed this, providing that "[t]he amount of [guideline] maintenance *** shall be calculated by taking 33⅓% of the payor's net annual income minus 25% of the payee's net annual income." 750 ILCS 5/504(b-1)(1)(A) (West 2018). As noted, this amendment was in response to a change in federal law that eliminated the deductibility of maintenance for federal tax purposes. See Pub. L. No. 115-97, 131 Stat. 2089 (2017) (repealing 26 U.S.C. § 71). The 2019 version also added section 504(b-1)(1)(A-1), which provides that

> "[m]odification of maintenance orders entered before January 1, 2019 that are and continue to be eligible for inclusion in gross income of the payee for federal income tax purposes and deductible by the payor shall be calculated by taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income." 750 ILCS 5/504(b-1)(1)(A-1) (West 2018).

This 30%-20% formula was identical to the formula specified in the former version of section 504(b-1)(A) and adopted by the agreement.

¶ 18    In August 2018, when the dissolution judgment was entered, section 502(a) of the Act provided that "[t]o promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into an agreement containing provisions for *** maintenance of either of them." 750 ILCS 5/502(a) (West Supp. 2017). Section 502(b) provided:

> "The terms of [an] agreement, except those providing for the support and parental responsibility allocation of children, are binding upon the court unless [the court] finds, after considering the economic circumstances of the parties and any other relevant evidence

produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." *Id.* § 502(b).

¶ 19 The parties' agreement pertained to spousal maintenance, not child support or parental responsibility. Therefore, the agreement was binding absent a finding of unconscionability. Unconscionability is assessed based on the facts existing *immediately* after the agreement is made (*In re Marriage of Nilles*, 2011 IL App (2d) 100528, ¶ 13), and "involves at least two separate considerations: one, the conditions under which the agreement was made, and two, the economic circumstances of the parties resulting from the agreement" (*In re Marriage of Riedy*, 130 Ill. App. 3d 311, 313-14 (1985)). Under the second consideration, an agreement is unconscionable if "no man in his senses, not under delusion, would make [it], on the one hand, and *** no fair and honest man would accept [it] on the other." *Id.* at 317.

¶ 20 Neither party has contended that the agreement is unconscionable, and the trial court did not so find. Interestingly, although no one is claiming that the agreement is unconscionable, we note that interpreting the agreement consistent with section 504(b-1)(1)(A) of the 2019 version would render the agreement unconscionable. Both parties agreed that, under the 2019 version, petitioner would receive monthly maintenance of only $3. No sensible person would offer, and no fair-minded person would accept, $3 in monthly maintenance.

¶ 21 We recognize that section 504(a) lists "any valid agreement of the parties" as one of a multitude of factors for the trial court to consider in setting the amount and duration of maintenance. 750 ILCS 5/504(a)(13) (West 2018); 750 ILCS 5/504(a)(13) (West Supp. 2017). However, as noted, the 2018 version of section 502(b) clearly states that an agreement not pertaining to child support and parenting is enforceable if it is not unconscionable. If an agreement governing maintenance is just a factor for the court to consider in setting maintenance, parties

would have little incentive to enter into such agreements. Thus, making agreements enforceable unless they are unconscionable advances section 502's stated goal of fostering settlement of disputes in connection with marital dissolution.

¶ 22    Given the validity of the agreement, we turn now to interpreting its maintenance terms. Interpreting an agreement involves principles of contract construction. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 425-26 (2005). Courts must give effect to the parties' intent, which is best determined by examining the language used in the parties' agreement. *Id.* at 426. When the language used in the agreement is unambiguous, the agreement's terms must be given their plain and ordinary meaning. *Id.*

¶ 23    Here, the parties' agreement unambiguously provides that respondent shall pay petitioner maintenance amounting to 30% of her gross income minus 20% of petitioner's gross income. The agreement also unambiguously provides that the maintenance payments are includable in petitioner's gross income and deductible by respondent for any tax purposes. Given that the agreement clearly and unambiguously provides how maintenance is calculated, it must be followed. 750 ILCS 5/502(b) (West Supp. 2017); see also *Olson v. Olson*, 58 Ill. App. 3d 276, 279 (1978) ("Only if [an] agreement, when taken as a whole, fails to sufficiently define [the parties'] rights and duties is it necessary or indeed justifiable to determine the form of [maintenance] involved and the corresponding rights and duties which the law prescribes for that form.").

¶ 24    In two respects, the agreement contemplates modifications of its terms. First, the agreement states that "[p]ayments for maintenance shall be modifiable upon a showing of a substantial change in circumstances." Second, the agreement provides that, if the tax consequences of maintenance payments are changed, "payment(s) otherwise due to [respondent] *** may be adjusted by an amount to be negotiated by the parties" or by court order if negotiations fail. Since the agreement

provides no criteria for modification of the agreement, a court considering a request for modification would resort to the maintenance factors of sections 504 and 510 of the Act (750 ILCS 5/504, 510 (West 2018); 750 ILCS 5/504, 510 (West Supp. 2017); *Blum v. Koster*, 235 Ill. 2d 21, 31-32 (2009)). This, of course, would raise the question of which version of those sections would apply.

¶ 25    However, we need not decide which statutory version applies, because the petition to set maintenance did not seek a modification of the agreement's maintenance formula, but rather a calculation using that formula. Under the agreement, respondent would begin paying maintenance immediately upon receiving petitioner's pension benefits. Before respondent began receiving her share of petitioner's pension benefits (in April 2019), respondent lost her job and started a new one. Since respondent's duty to pay maintenance was not yet triggered, her change in employment was not a "change in circumstances" contemplated by the agreement but rather a revised baseline for the initial calculation of maintenance.

¶ 26    Respondent, however, contends that because maintenance was not calculated until April 2019 when petitioner began receiving her share of the pension, the 2019 version of section 504(b-1) should apply here. We disagree. The parties set a formula for maintenance in August 2018, when the agreement was executed and incorporated into the dissolution judgment. See *In re Marriage of Maher*, 95 Ill. App. 3d 1039, 1042 (1981) (agreement binding when approved by trial court). What remained undetermined in August 2018 was the dollar amount of monthly maintenance that petitioner would receive based on the parties' income. That calculation was not a contingency that had to occur before respondent became entitled to maintenance. See *id.* (agreement not effective when entered if parties "subjected [agreement's] effectiveness to the

occurrence of other contingencies"). Because respondent's entitlement to maintenance was not in question when the 2019 version of the Act became effective, that version does not govern here.

¶ 27    The trial court relied on *Carstens* in applying the 2019 version of section 504(b-1). The parties discuss *Carstens* as well as *In re Marriage of Cole*, 2016 IL App (5th) 150224, and *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838. All three cases differ materially from the facts here.

¶ 28    In *Cole*, the parties secured a judgment of legal separation in 2009 and incorporated into that judgment a separation agreement, which required the husband to pay the wife maintenance. *Cole*, 2016 IL App (5th) 150224, ¶ 3. Thereafter, the husband petitioned to dissolve the parties' marriage, and the wife asked that the terms of the legal separation be incorporated into the judgment dissolving the marriage. *Id.* ¶ 4. The trial court held a hearing on the dissolution petition in 2014, but it did not enter its order until February 2015. *Id.* In that order, the court found that the agreement's provision making maintenance nonmodifiable was unconscionable, and the court reduced maintenance due to an increase in the wife's income. *Id.* The husband moved the court to reconsider, arguing that the court failed to apply the statutory guidelines that went into effect on January 1, 2015. *Id.* ¶ 5; see Pub. Act 98-961 (eff. Jan. 1, 2015) (adding 750 ILCS 5/504(b-1)). Under these guidelines, the husband's maintenance obligation would be further reduced. *Cole*, 2016 IL App (5th) 150224, ¶ 5. The court found that those guidelines did not apply, because, among other things, the hearing on maintenance was held, and all evidence was received, in 2014. *Id.*

¶ 29    The appellate court agreed. *Id.* ¶ 7. In reaching that conclusion, the court noted that the mere fact that the case was taken under advisement and not ruled on until 2015, after the law

changed, did not warrant the application of the 2015 version of the law, as "[t]he rights of the parties should be determined by the facts of the case, not by the timing of the final order." *Id.* ¶ 9.

¶ 30    This court had the opportunity to consider *Cole* in *Carstens*. There, the parties executed an agreement that was incorporated into the 2004 judgment dissolving their marriage. *Carstens*, 2018 IL App (2d) 170183, ¶ 4. The agreement provided that the husband would pay the wife maintenance. *Id.* The Act's provisions on maintenance were amended effective January 1, 2016. *Id.* ¶ 29. Almost two months after the amendments went into effect, the husband petitioned to terminate or reduce maintenance. *Id.* ¶ 10. In ruling on the petitions, the trial court found, among other things, that it was not bound to follow the Act's amendments. *Id.* ¶ 17.

¶ 31    We reversed the trial court and held that the Act's amendments applied. *Id.* ¶ 36. We noted that, though the husband's petition sought modification of an order entered before the amendments went into effect, his petition was filed after the effective date. *Id.* ¶ 29. Thus, the husband's petition fell squarely within section 801(c) of the Act. *Carstens*, 2018 IL App (2d) 170183, ¶ 29 (citing 750 ILCS 5/801(c) (West 2016) (the Act applies to "all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act ")). We found the analysis in *Cole* flawed, in that the court there failed to consider the impact, if any, that section 801 of the Act had in that case. *Id.* ¶¶ 32-33.

¶ 32    In *Kasprzyk*, 2019 IL App (4th) 170838, ¶¶ 3, 6, the parties' 25-year marriage was dissolved in 2014. In the order dissolving the marriage, the trial court awarded the wife two years of maintenance, but it determined that the wife could seek to extend maintenance before that two-year period expired. *Id.* ¶ 7. In 2016, the legislature added guidelines for trial courts to consider in setting the duration of maintenance. *Id.* ¶ 28. That same year, the wife petitioned to extend maintenance. *Id.* ¶ 8. In 2017, the court held a hearing and granted the wife's petition based on the

2016 amendments to the Act. *Id.* ¶¶ 9, 16. The husband moved to reconsider, arguing that the trial court should not have applied the 2016 version of the law. *Id.* ¶ 17. The trial court denied the motion, noting that "there had 'been a finality and then there [are] new circumstances that arrive[d].' " *Id.* ¶¶ 18-19.

¶ 33    On appeal, the court characterized the wife's proceeding as one for review, rather than modification, of maintenance; both review and modification proceedings are avenues for reconsideration of maintenance. *Id.* ¶ 23 (distinguishing review and modification proceedings). The court considered *Cole* and *Carstens* in deciding whether the new or old version of the law applied. *Id.* ¶¶ 29-30. In following *Carstens*, the court observed that *Cole* involved an initial maintenance award, while *Carstens* involved proceedings seeking to modify a maintenance award. *Id.* ¶¶ 31-34. As in *Carstens*, the wife in *Kasprzyk* asked the trial court to reconsider the terms of a maintenance award entered before the new law's effective date. However, she filed her petition to extend after the new law's effective date, the evidence supporting her petition concerned matters arising after the new law's effective date, and the hearing on her petition was held after the new law went into effect. *Id.* ¶ 34.   As in *Carstens*, the court found that the case fell within section 801(c) of the Act. Thus, the new version of the law applied in considering the wife's petition to extend maintenance. *Id.* ¶ 38.

¶ 34    *Cole*, *Carstens*, and *Kasprzyk* are all distinguishable from the present case. *Carstens* involved a modification proceeding, and *Kasprzyk* involved a review proceeding. In each case, the parties had an agreement on maintenance that did not provide criteria for modification or review; hence, the question was not *whether* statutory criteria applied to fill the void, but rather *which version* applied. See *Blum*, 235 Ill. 2d at 31-32 (statutory factors govern proceedings for modification or termination of maintenance unless the parties' agreement provides specific terms

to govern such proceedings). As for *Cole*, even if that case is rightly described as involving "an initial maintenance award" (*Kasprzyk*, 2019 IL App (4th) 170838, ¶ 31), it was an award that the trial court determined by applying statutory factors after declaring the parties' agreement unconscionable.

¶ 35    By contrast, the proceeding here was for an initial calculation of maintenance using a specific formula provided in the parties' agreement, which neither party claimed, nor the trial court found, was unconscionable.

¶ 36    We note that, *if* we were to entertain the question of which version of the Act applies, we would hold that the former version applies. The formula for calculating maintenance was set in 2018. Moreover, petitioner executed his QDRO in 2018, his pension was garnished in 2018, respondent obtained new employment in 2018, and petitioner moved to set the dollar amount of maintenance in 2018. All that occurred in 2019 was the filing in court of the already effective QDRO, the hearing on petitioner's petition, and the trial court's ruling on that petition. These 2019 events were not pivotal in calculating the dollar amount of maintenance that petitioner was owed pursuant to the parties' agreement.

¶ 37    In reaching this conclusion, we must comment on this court's determination in *Carstens* that the reasoning in *Cole* was flawed because the court failed to address the pertinence of section 801 of the Act. Section 801 controls the applicability of amendments to the Act. See 750 ILCS 5/801 (West 2018). We do not comment on how, if at all, section 801 applied in *Cole*. We are content simply to hold that section 801 does not apply here, because the setting of maintenance is controlled entirely by contractual terms; hence, there is no need to determine whether the former or 2019 version of the maintenance factors applies. And *if* that question were pertinent here, we would hold that the former version of section 504(a) applies. Section 801(b), which has remained

unchanged since January 1, 2016 (see Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016)), states that the Act applies "to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." 750 ILCS 5/801(b) (West 2018). Courts considering this language have determined:

> " '[T]he legislature attempted through section 801(b) to allow only those issues which had not been fully litigated prior to the effective date of the new [A]ct to be decided under the new law. It is not this section's intent to require the relitigation of issues already decided under the previous law simply because post-trial motions are pending or filed after the effective date of the new [A]ct.' " *West v. West*, 76 Ill. 2d 226, 234 (1979) (quoting *Staub v. Staub*, 67 Ill. App. 3d 1004, 1007 (1978)).

¶ 38    The issue of maintenance was determined in August 2018 when the trial court issued its dissolution judgment incorporating the agreement, which specified a formula for calculating maintenance. What remained as of January 1, 2019, was the calculation of that maintenance. Thus, the former version of section 504 would apply here.

¶ 39    Moreover, even if the 2019 version applied, the trial court's judgment could be seen as a proper award of nonguideline maintenance. Under either the former or the 2019 version of section 504(b-1)(2) of the Act, the trial court was allowed to impose nonguideline maintenance if it found, after considering the delineated factors, that imposing guideline maintenance under the specified calculations was inappropriate. 750 ILCS 5/504(b-1)(2) (West 2018); 750 ILCS 5/504(b-1)(2) (West Supp. 2017). Here, although the trial court may not have properly stated that it was deviating from awarding guideline maintenance under the 2019 version of the law (750 ILCS 5/504(b-2) (West 2018)), it was apparent that the trial court gave great deference to the delineated factor that the parties had a valid agreement (*id.* § 504(a)(13), (b-2)(1)). The court recognized that following

section 504(b-1)(1)(A) of the 2019 version of the law would result in petitioner receiving only $3 in monthly maintenance (*id.* § 504(b-2)(2)).

¶ 40    For the above-stated reasons, we hold that the trial court erred in applying the 2019 version of section 504(b-1)(1)(A-1) in calculating maintenance. The error, however, was harmless because the court ultimately applied the same 30%-20% formula that was specified in the parties' agreement. See *id.* § 504(b-1)(1)(A-1).

¶ 41                                    III. CONCLUSION

¶ 42    We affirm the judgment of the circuit court of Du Page County.

¶ 43    Affirmed.

---

**No. 2-19-0929**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Wig*, 2020 IL App (2d) 190929 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 17-D-1444; the Hon. Timothy J. McJoynt, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Chantelle Porter, of A. Traub & Associates, Ltd., of Lombard, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard Ian Conner, of Kollias P.C., of Winfield, for appellee. |

---