2019 IL App (2d) 190327-U
No. 2-19-0327
Order filed November 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF SUE CARSTENS, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No.  01-D-1029 |
| | ) | |
| JOHN CARSTENS, | ) | Honorable |
| | ) | Charles W. Smith, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Party seeking modification or termination of maintenance award bears burden of proof; and (2) the evidence presented in this case did not reasonably demonstrate a substantial change in circumstances warranting the termination of wife's indefinite maintenance.

¶ 2    This is an appeal from an order of the circuit court of Lake County following this court's remand for further proceedings with regard to a petition filed by respondent, John Carstens, to terminate or reduce indefinite maintenance awarded to petitioner, Sue Carstens.  See *In re Marriage of Carstens*, 2018 IL App (2d) 170183.  Upon remand, the trial court: (1) denied respondent's petition to terminate the indefinite maintenance awarded to petitioner; (2) ordered

that the amount of maintenance to be paid by respondent to petitioner shall remain as set in the trial court's order of February 23, 2017; and (3) allowed that the duration of maintenance shall remain as indefinite, but can be reviewed as permitted by statute and case law upon a showing of a substantial change in circumstances. Respondent appeals from the trial court's ruling upon remand, arguing that the trial court improperly allocated the burden of proof to him and erred in denying his motion to terminate the award of indefinite maintenance. We affirm.

¶ 3                                    I.  BACKGROUND

¶ 4      As noted above, this appeal arises from an order of the circuit court of Lake County following this court's remand for further proceedings. The facts leading to this appeal are set forth in detail in this court's prior opinion. See *Carstens*, 2018 IL App (2d) 170183. Nevertheless, we restate many of those facts here to place into context the issues now before us.

¶ 5      Petitioner and respondent were married in 1986. Three children were born to the parties during the marriage. The parties separated on May 7, 2001, and petitioner subsequently filed a petition for dissolution of marriage. On December 6, 2004, the circuit court of Lake County entered a judgment of dissolution of marriage. At the time of the dissolution, both parties were 49 years old. During the marriage, petitioner did not work outside of the home. Respondent was employed as the chairman and chief executive officer of Libertyville Bank & Trust.

¶ 6      The judgment of dissolution incorporated a "Marital Settlement Agreement" (MSA) requiring  respondent to pay petitioner $5000 per month beginning on January 15, 2005, and on the 15th day of each following month for 60 consecutive months. The maintenance payment was subject to review upon a pleading filed by petitioner prior to the due date of the 60th payment, but was non-modifiable by either party during the initial 60-month period. The MSA provided that the amount of maintenance was based upon "[respondent's] represented gross income from all

sources of approximately $277,500 per year *** and upon [petitioner's] representation that she is currently a full time homemaker who has not earned any significant income from any source since the children were born."

¶ 7    On December 10, 2009, petitioner filed two petitions, including a "Petition for Increase in Maintenance and *** Other Relief."  On March 8, 2010, respondent answered the petitions and filed a "Petition to Terminate Maintenance."  A hearing on the parties' petitions was held before Judge Jay Ukena on August 31 and September 2, 2010.  On March 17, 2011, Judge Ukena issued his oral ruling, which included the following factual findings in accordance with sections 504(a) and 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a), 510(a-5) (West 2010)).

¶ 8    Judge Ukena noted that the parties were married on June 21, 1986, and the judgment of dissolution of marriage was entered on December 6, 2004.  Pursuant to the judgment of dissolution, petitioner received approximately 55% of the marital estate and respondent received about 45% of the marital estate.  Neither party had acquired any property since the judgment of dissolution.  According to the financial affidavits filed in conjunction with the proceeding, petitioner had assets worth about $2,329,427 and respondent had assets worth approximately $1,743,355.  Judge Ukena noted that although the parties were generally in good health, petitioner had back issues, the severity of which was disputed.

¶ 9    Judge Ukena further noted that beginning in 1996 and up to and at the time of his ruling in March 2011, respondent had been employed as the chairman of Libertyville Bank & Trust.  Respondent's income had increased from about $272,000 per year when the judgment of dissolution was entered to an average of approximately $392,000 per year by 2010.  Petitioner was unemployed when the dissolution of marriage was entered.  She made efforts to seek employment

and worked part time at Williams-Sonoma, but left the position in 2008 because of back issues when lifting heavy items. Thereafter, petitioner remained unemployed through March 2011, except for a small side business she was trying to establish. Petitioner receives around $60,000 per year in investment income (about the same as it was on the date of the judgment of dissolution) plus maintenance from respondent. Petitioner indicated that her back problems still limit her employability, and she submitted evidence she still receives treatment for her back. Although neither party introduced evidence as to the exact nature of the back problem, respondent agreed that the condition does affect petitioner's ability "on some level to earn income." Nevertheless, respondent opined that with "appropriate employment" petitioner could earn a minimum of $30,000.

¶ 10    With respect to the standard of living established during the marriage, Judge Ukena found no evidence that the parties' lifestyle was lavish, but rather that they lived a lifestyle "commensurate with an income of $272,000 a year" which, during the marriage, was supporting a family of five. Judge Ukena also reviewed the needs of the parties and concluded that each party's financial affidavit contained what "each one represents their needs to be." Judge Ukena found that the present and future earning capacity of respondent was $392,000 and the present and future earning capacity of petitioner was $60,000. Judge Ukena further found that petitioner had a limited ability to earn more because she had sacrificed development of her career and education by staying at home for the family during most of the marriage. Judge Ukena found that by staying at home and taking care of the children, petitioner helped advance respondent's career. Judge Ukena noted that even if he imputed an additional $30,000 per year to petitioner's investment income of $60,000, petitioner could not "live the lifestyle of the marriage" on $90,000 per year. After balancing the time necessary for petitioner to acquire education, training, and employment to be

financially independent with the standard of living established during the marriage, Judge Ukena determined that "[i]t appears at least that [petitioner] is a candidate for indefinite maintenance."

¶ 11    On March 31, 2011, Judge Ukena entered a written order in accordance with his oral findings.  Relevant to these proceedings, Judge Ukena denied respondent's petition to terminate maintenance and granted petitioner's petition for an increase in maintenance.  Specifically, the order provides: "[Petitioner] is awarded indefinite maintenance of $5,000 per month commencing on the first month after entry of this Order until further Order of the court."  Attached to the order was the transcript of the trial court's oral findings on March 17, 2011, which were expressly incorporated therein.  Thereafter, respondent filed a motion to reconsider and a motion to reopen proofs.  Judge Ukena denied both posttrial motions, and neither party took an appeal from Judge Ukena's rulings.

¶ 12    On February 24, 2016, respondent filed a "Verified Petition to Terminate, or Alternatively, Reduce Maintenance."  On April 22, 2016, pursuant to leave of court, respondent filed an amended petition.  In support of his amended petition, respondent noted that at the time of the dissolution of marriage, he was employed as the chairman of Libertyville Bank & Trust.  He alleged that on or about December 11, 2015, as a result of corporate restructuring and through no fault of his own, his employment with Libertyville Bank & Trust was terminated.  Concurrently with the termination of his employment at Libertyville Bank & Trust, respondent entered into a "Separation Agreement and General Release" (Separation Agreement) dated December 18, 2015.  Pursuant to the Separation Agreement, respondent's total gross compensation was reduced from approximately $38,667 per month to about $24,167 per month.  On or about February 29, 2016, respondent accepted an employment offer with The Private Bank.  Respondent's gross pay from The Private Bank is approximately $15,500 per month.  However, by virtue of having accepted

full-time employment with The Private Bank, the compensation respondent has been receiving under the Separation Agreement will terminate on or about August 1, 2016. Respondent asserted that these facts demonstrate a substantial reduction of his income as a result of his termination by Libertyville Bank & Trust and constitute a substantial change in circumstances warranting the termination or modification of maintenance pursuant to sections 504 and 510 of the Act (750 ILCS 5/504, 510 (West 2016)). Respondent further asserted that in light of the fact that he will turn 61 in May 2016 and the unlikelihood of his ability to procure employment similar in income to his former position with Libertyville Bank & Trust before he reaches 65 years of age, at which time he intends to retire, there has been an impairment of his future earning capacity. Respondent requested entry of an order terminating his maintenance obligation or, alternatively, reducing the same.

¶ 13    On May 11, 2016, petitioner filed a response to respondent's amended petition. On December 12, 2016, respondent filed a motion *in limine* requesting, *inter alia*, that the trial court take judicial notice of the factual findings made by Judge Ukena in March 2011. On January 3, 2017, the trial court entered in order granting in part the motion *in limine*. Specifically, the court stated that it would take judicial notice of "file #01 D 1029 [and] in particular the transcript of 3/17/2011."

¶ 14    A hearing on respondent's amended petition was held on January 10, 2017. Both parties testified at the hearing and various exhibits, including tax returns and financial affidavits, were admitted. Respondent testified regarding his employment status. He noted that due to a decision by management, his position with Libertyville Bank & Trust was terminated in December 2015. However, under the terms of the Separation Agreement, he received his base salary for seven additional months, until July 2016. Respondent further testified that in February 2016, he began

working as a commercial banking officer for The Private Bank. Respondent earns $175,000 per year at The Private Bank plus $11,000 per year to partially offset country club dues. Respondent testified that there is also a "chance" for a bonus. The maximum bonus he could earn would be 40% of his base salary of $175,000. After July 2016, respondent's only source of income was his salary from The Private Bank. Respondent testified that he is paid twice a month at The Private Bank. He identified a check stub from November 30, 2016, showing that his gross salary each pay period is $7750 and his net pay is $4805. Respondent testified that based on his new salary, and after paying his monthly expenses, including petitioner's maintenance of $5000 per month, he has a monthly deficit of $2612.

¶ 15    Petitioner testified that she is not employed and that she has not tried to find employment since 2011. She stated that her back problems prevent her from seeking gainful employment. Petitioner testified that her monthly income is $7268, which consists of $2268 in dividend income and $5000 in maintenance from respondent. Petitioner stated, however, that the dividends she receives are reinvested and the maintenance she receives is insufficient to cover her monthly expenses. Petitioner testified that her monthly expenses total about $12,000 per month. This includes about $2900 per month towards the expenses of the parties' three children, who are emancipated and reside outside of petitioner's home. As a result, petitioner has a monthly deficit (after deduction for taxes) of $6058 per month. Petitioner testified that she makes up for the monthly shortfall out of her "asset account." Petitioner explained that she receives an automatic withdrawal of $5000 per month from one of her asset accounts, although she periodically makes additional withdrawals. In 2015, for instance, petitioner took out a total of $99,000 from her asset accounts. Petitioner testified that as a result of the withdrawals from her asset accounts, the value of the accounts has decreased by about $120,000 between December 2014 and November 2016.

Petitioner acknowledged that if she did not provide for the children, her monthly expenses would be about $9000 per month.

¶ 16    On February 23, 2017, after receiving the parties' closing arguments, the trial court issued its ruling.  The court denied respondent's petition in part and granted it in part.  Specifically, the court denied respondent's request for a termination of maintenance, but granted his request for a reduction of maintenance.  In so finding, the court initially determined that Judge Ukena's March 31, 2011, order, which awarded petitioner "indefinite maintenance" of $5000 per month until further order of the court was the "law of the case" because the order constituted a final judgment and neither party took an appeal therefrom.   Accordingly, the court stated that it would not alter the provisions of the March 31, 2011, order classifying the maintenance award to petitioner as "indefinite."

¶ 17    Next, the court reviewed the award of maintenance in light of the factors set forth in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)).  The court focused on whether respondent established "a 'substantial change in circumstances' in his ability to pay maintenance as well as an analysis of the standard of living enjoyed by the parties during the marriage."   The court also considered the length of the marriage and the number of years that respondent had been paying maintenance.  The court found that respondent did not present any evidence that petitioner's employability had changed since 2011.   In addition, the court reviewed financial affidavits completed by the parties in 2016 and noted that since 2011, the value of respondent's assets had increased to $2,164,659, while the value of petitioner's assets had decreased to $2,140,611. Ultimately, however, the court determined that respondent had established a substantial change in circumstances based principally upon his change in employment.   In this regard, the court determined that respondent's termination from his employment at Libertyville Bank & Trust "was

not voluntary" and that the difference between respondent's salary at Libertyville Bank & Trust and his salary at The Private Bank met the definition of a "substantial change in circumstances" so as to qualify for a modification of his maintenance obligation.

¶ 18    The court then turned again to the issue of the duration of the maintenance award, rejecting respondent's argument that the guidelines in section 504(b-1)(1)(B) of the Act (750 ILCS 5/504(b-1)(1)(B) (West 2016)) govern the duration of the maintenance payments and require the termination of his obligation to pay maintenance.  The court cited two reasons for this finding.  First, the court stated that the guidelines as to the duration of a maintenance award do not apply to cases in which there has been an award of permanent or indefinite maintenance.  Second, citing *In re Marriage of Cole*, 2016 IL App (5th) 150224, the court found that it could not apply the guidelines as to the duration of a maintenance award because the guidelines were added to Section 504 pursuant to an amendment that became effective in January 2016 and "the amendment to Section 504 [of the Act] represents a substantive change to the law and not a procedural change." As to the amount of the maintenance award, the court observed that a new method for calculating the amount of maintenance also became effective in January 2016.  See 750 ILCS 504(b-1)(1)(B) (West 2016).  The court stated that although this change was substantive and it was therefore not bound by the change, it nevertheless considered the new calculation formula to be a guideline "as to what is equitable and just."  Accordingly, the court used the new calculation method as a template and reduced respondent's maintenance obligation to $4196.40 per month with a commencement date of March 1, 2017.  In addition, the trial court ordered respondent to pay as maintenance 30% of any income above his base salary and country club allowance of $186,000. On March 7, 2017, respondent filed a notice of appeal.

¶ 19    On appeal, respondent raised two assignments of error.  First, respondent disputed the trial

court's finding that Judge Ukena's prior award of "indefinite maintenance" constituted the law of the case. Second, respondent argued that the trial court erred in finding that the guidelines as to the duration of a maintenance award set forth in section 504(b-1) of the Act (750 ILCS 5/504(b-1) (West 2016)) did not apply to this case. We affirmed in part, reversed in part, and remanded the case with directions. *Carstens*, 2018 IL App (2d) 170183, ¶¶ 19-40.

¶ 20     Initially, we concluded that the law-of-the-case doctrine did not apply because neither party appealed Judge Ukena's March 31, 2011, order awarding petitioner indefinite maintenance. *Carstens*, 2018 IL App (2d) 170183, ¶ 23. Additionally, we noted that the law-of-the-case doctrine does not preclude a trial court from reconsidering an "indefinite" or "permanent" award of maintenance if the facts establish a substantial change in circumstances. *Carstens*, 2018 IL App (2d) 170183, ¶ 24 (citing 750 ILCS 5/510(a-5) (West 2016) and various cases). We observed that Judge Ukena himself clearly contemplated that the order of "indefinite maintenance" could be modified by providing in his order that the award would stand "until further [o]rder of the court." *Carstens*, 2018 IL App (2d) 170183, ¶ 25. Thus, we held that the trial court erred in finding that the law-of-the-case doctrine precluded it from considering whether to modify the duration of the maintenance award. *Carstens*, 2018 IL App (2d) 170183, ¶ 25.

¶ 21     We then engaged in statutory construction and determined that the amendments to the statutory duration guidelines set forth in section 504(b-1) of the Act (750 ILCS 5/504(b-1) (West 2016)) applied to respondent's petition to terminate or modify maintenance. *Carstens*, 2018 IL App (2d) 170183, ¶¶ 28-29. Accordingly, we remanded the matter to the trial court to assess whether the duration of the maintenance award should be modified. *Carstens*, 2018 IL App (2d) 170183, ¶ 36. We instructed as follows:

"[W]e remand the matter for the trial court to assess whether the duration of the

maintenance award should be modified in accordance with the provisions of section 504(b-1). We observe, however, that the trial court is not bound by the section 504(b-1) guidelines as to duration. Rather, if the court determines that the application of the guidelines 'would be inappropriate' (750 ILCS 5/504(b-1)(1) (West 2016)), it may assess the duration of the maintenance award in accordance with subsection (b-1)(2) (750 ILCS 5/504(b-1)(2) (West 2016)) [(providing for a nonguideline award of maintenance)]." *Carstens*, 2018 IL App (2d) 170183, ¶ 36.

We then stated that if the court deviates from the duration guidelines, it must state its reasons therefor. *Carstens*, 2018 IL App (2d) 170183, ¶ 36 (citing 750 ILCS 5/504(b-2)(2) (West 2016)). We offered no opinion "as to whether the duration of maintenance in this case should accord with the section 504(b-1) guidelines, whether a nonguideline analysis pursuant to section 504(b-1)(2) should occur, or whether the duration of the maintenance award should even be modified." *Carstens*, 2018 IL App (2d) 170183, ¶ 36.

¶ 22     Following the issuance of our opinion, respondent filed a "Motion for an Examination Pursuant to Supreme Court Rule 215." See Ill. S. Ct. R. 215 (eff. Jan. 1, 2018). In the motion, respondent asserted that "there has never been any competent evidence concerning [petitioner's] purported back problems" and argued that if petitioner was going to advance her back problems as a reason to deviate from the statutory duration guidelines, she should be examined by a physician. On August 6, 2018, over petitioner's objection, the trial court granted respondent's motion and ordered petitioner to present for an examination by Dr. Jay Levin. The order specified that respondent "shall pay for any and all costs associated with the exam" including "any diagnostics ordered by Dr. Levin in conjunction with said exam." On October 19, 2018, the court entered an order noting that petitioner had seen Dr. Levin. The same order required the parties to

disclose witnesses by November 16, 2018, and scheduled a hearing on the remanded issue for February 5, 2019.

¶ 23    On December 13, 2018, petitioner filed a "Motion to Define Scope of Remand Hearing, if any, and for Other Relief."  Petitioner noted that Dr. Levin had submitted a three-page report that included a medical diagnosis and an order for an MRI.  Petitioner's attorney contacted counsel for respondent, who indicated that respondent would pay for the MRI.  Despite this representation, counsel for respondent later told petitioner's attorney that upon reviewing Dr. Levin's report, he "elected to pass on the cost of further diagnostics being borne by [his] client."  Petitioner argued that by refusing to pay for the MRI, respondent violated the August 6, 2018, order, which specified that respondent would pay for any diagnostics ordered by Dr. Levin in conjunction with the exam. Petitioner further asserted that she contacted counsel for respondent to request that Dr. Levin's report be admitted without the need to call him as a witness, but counsel for respondent disagreed. Petitioner argued that by declining to stipulate to Dr. Levin's report, respondent tacitly conceded that he could not meet his burden of proof concerning the maintenance duration issue.  As a result, petitioner requested, *inter alia*, that the court enter an order defining the scope of the remand hearing and that it "infer a negative inference at the hearing for [respondent's] refusal to pay for the MRI ordered by Dr. Levin and for his refusal to stipulate to the entry of the report prepared by Dr. Levin."

¶ 24    On January 7, 2019, respondent filed a response to petitioner's motion.  In the response, respondent acknowledged that he declined to "pay for additional tests required by [Dr. Levin] to prepare a complete report."  He stated that he had discretion "in how he wants to litigate his case and in what discovery or evidence he desires to present to [the] Court" and that he did not want to admit Dr. Levin's "partial, incomplete report at the remand hearing based on hearsay."

Respondent then argued that the modification of a maintenance award involves a two-step process: (1) establishing a substantial change in circumstances and (2) deciding whether to apply the statutory guidelines or to deviate therefrom. Respondent asserted that the trial court already found a substantial change in circumstances, thus the only remaining task upon remand was for the court to determine whether to apply the guidelines or to deviate therefrom based on an application of the factors in sections 504(a) and 510(a-5) of the Act (750 ILCS 5/504(a), 5/510(a-5) (West 2016)). Thus, respondent concluded, "the scope on remand is for both parties to put on evidence so the Judge can apply the relevant factors to determine whether to apply guideline formula to the duration of maintenance consistent with how the Court determined the amount of maintenance or to deviate from the guidelines for duration, but not the amount." On January 24, 2019, in response to petitioner's motion to define the scope of remand, the trial court entered an order providing that the parties "shall proceed to present evidence as scheduled on 2-5-19 *** without further notice."

¶ 25 The parties presented for the February 5, 2019, hearing as scheduled. At the outset of the hearing, respondent filed a motion *in limine* seeking to bar "[a]ny and all reference to Dr. Jay Levin's medical examination of Petitioner and/or the report he prepared after he examined [petitioner]." Among other things, respondent argued that evidence from Dr. Levin "[a]ssumes facts not in evidence" and constituted hearsay and that the parties should be barred from "speculation or argument about the substance of the testimony of any witness who is absent or unavailable, or whom Respondent did not call to testify." The court granted the motion in part, prohibiting the parties from introducing Dr. Levin's medical report because it constituted hearsay. Regarding whether the parties could reference Dr. Levin's medical examination and, more specifically, whether a negative inference could be drawn based upon respondent's failure to call Dr. Levin, produce his report, or pay for the MRI, the court reserved that portion of the motion for

its ruling.

¶ 26    During his opening statement, respondent argued that upon remand, the court must set the duration of maintenance in accordance with the section 504(b-1) guidelines unless it chooses to deviate and must, if there is a deviation, make specific findings under section 504(b-2) of the Act. Respondent further argued that it is petitioner's burden to show a proper basis for any deviation from the duration guidelines.  Respondent argued that under the duration guidelines, he would have only been required to pay maintenance for 107.4 months.  Respondent further argued that he paid "an excess of maintenance" since February 24, 2016, the date he filed his petition to terminate or reduce maintenance.  Respondent calculated this excess to be "178,000 and change" and asked that the overage be refunded to him by petitioner.

¶ 27    In response, petitioner disagreed that it was her burden to establish why the application of the statutory duration guidelines are not appropriate because it was respondent who filed the motion to terminate maintenance.  Petitioner argued that respondent failed to meet his burden in that he did not bring forth any allegations or evidence regarding petitioner's employability. Petitioner further asserted that this court's remand instructions clearly indicated that the court was to assess the duration of maintenance "based on the evidence heard."

¶ 28    Both respondent and petitioner testified at the hearing.  Respondent recounted the date of his marriage to petitioner and the date petitioner filed for dissolution.  Respondent then testified that he has paid $178,739.90 in maintenance to petitioner since February 24, 2016, the date he filed the petition at issue.  Following respondent's testimony, petitioner moved for a directed finding.  The trial court denied the motion.

¶ 29    Petitioner recounted that she was 55 years of age in 2011 when Judge Ukena entered the order awarding her indefinite maintenance.  At the remand hearing, petitioner was 63 years of age.

Petitioner testified that neither her health nor financial conditions have improved since Judge Ukena's ruling. Petitioner explained that her back condition and pain have worsened with age and that she takes more medication than she used to. Petitioner stated that she uses a water bottle to apply heat to her back for two hours each morning so she can "get moving" and uses a heating pad "constantly." To relieve the pain and pressure in her back, petitioner also sits on a cushion when she is at home, in the car, or at a restaurant. Additionally, she takes several Aleve pills throughout the day and applies "M stuff" up and down her tailbone. Petitioner further recounted that she takes medication for high blood pressure and has arthritis in all her fingers. Petitioner testified that the arthritis has caused the deformation of her fingers and inhibited her ability to type.

¶ 30    Petitioner testified that she has no employment income and she does not contribute to any retirement accounts. Petitioner added that she has not applied for any jobs since Judge Ukena's ruling, her maintenance payments from respondent coupled with her dividend income are still insufficient to meet her routine needs, and she continues to draw down her assets to pay her bills. Petitioner testified that the last time she had reportable income was about 10 years earlier when she worked for Williams-Sonoma. Petitioner stated that she quit the position at Williams-Sonoma because unloading shipments caused back issues. Petitioner opined that, on an overall basis, her financial condition is worse than it was when Judge Ukena entered his order in 2011.

¶ 31    On cross-examination, petitioner testified that she has not treated with a physician for her back issues because she is waiting to get on Medicare after being dropped from three insurance companies. Petitioner acknowledged the insurers did not specifically inform her that they dropped her because of her back issues or any other pre-existing condition. Petitioner testified that she used to see a physical therapist for her back, but the treatments do not help anymore. When asked whether she has assistance doing household chores, petitioner responded that she has a yard service

because she cannot mow the lawn or "deadhead." Petitioner acknowledged that no doctor has imposed any job restrictions based on her back condition, arthritis, or any other condition for which she has consulted a medical professional.

¶ 32 Petitioner further testified on cross-examination that her net worth has declined "significantly" since January 2017 because her stocks are not doing well. When asked how much she has lost since January 2017, petitioner responded that she was not sure because she has not opened her statement "in months." Petitioner subsequently testified that she had over $1.8 million in her investment accounts in 2017, but when she last opened a statement a couple of months earlier, she was down to "one-five something." Petitioner attributed the decline to a drop in the overall markets, not to withdrawals. Following petitioner's testimony, both sides rested. The court informed the parties that would take judicial notice of the "entire file" and ordered them to submit written closing arguments.

¶ 33 On April 2, 2019, the trial court entered a "Final Order and Ruling on Petition to Modify/Terminate Maintenance." Initially, the court held that respondent, as the party seeking to modify the duration of the maintenance award, had the burden of proof to establish a substantial change in circumstances as to petitioner's continued need for indefinite maintenance and that this inquiry was separate from the one under which the court had reduced the amount of maintenance. Next, the court noted that an order for maintenance may only be modified upon a showing of a substantial change in circumstances. The court, after considering Judge Ukena's ruling from 2011, the parties' testimony from 2017 and 2019, the relevant caselaw, and the statutory factors in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)), concluded that petitioner remains in need of maintenance based upon her poor health, lack of job skills, and the disparity in income and assets between the parties.

¶ 34    The court then observed that the statutory guidelines provide that the duration of a maintenance award shall be calculated by multiplying the length of the marriage at the time the dissolution action was commenced by a factor also based on the length of the marriage.  See 750 ILCS 5/504(b-1)(1)(B) (West 2016).  The court noted that the parties had been married for 179 months (14 years and 11 months) and the applicable statutory factor for a marriage of that length was 0.6, which equates to a statutory duration guideline of 107.4 months (179 months times 0.6).  The court allowed that respondent has paid maintenance for a term longer than the statutory period.  Nevertheless, after reviewing the factors in section 504(a) of the Act (750 ILCS 5/504(a) (West 2016)), the court concluded that a deviation from the statutory guidelines was necessary for various reasons, including: (1) the length of the marriage; (2) petitioner's absence from the workplace during the marriage to raise the parties' children; (3) medical problems which prevent petitioner from working; (4) the increase in value of respondent's assets since 2011 and the decline in the value of petitioner's assets during the same period of time; (5) Judge Ukena's 2011 order granting petitioner indefinite maintenance; (6) respondent's decision not to appeal Judge Ukena's 2011 order; (7) respondent's failure to show a substantial change in circumstances relative to petitioner's need for indefinite maintenance; and (8) petitioner's showing that there has been no change in her circumstances as to her ability to work since Judge Ukena's 2011 order.  Lastly, the court concluded that respondent's motion *in limine* and petitioner's motion to draw a negative inference from respondent's failure to call Dr. Levine were rendered moot by the court's decision. Respondent subsequently filed a notice of appeal.

¶ 35                                        II.  ANALYSIS

¶ 36    On appeal, respondent argues that the trial court abused its discretion in declining to terminate the award of indefinite maintenance.  Respondent's argument is grounded in the premise

that the trial court improperly placed upon him the burden of establishing a substantial change in circumstances since 2011 that would have obviated petitioner's need for continued maintenance. According to respondent, because he had already established a substantial change in his income resulting in the trial court reducing the *amount* of his maintenance obligation, it was "untenable" for the trial court to require him to prove a separate substantial change in circumstances to merit a modification of the *duration* of his maintenance obligation. Respondent goes on to argue that since he established a substantial change in circumstances (*albeit* as to the amount of the maintenance), the statutory maintenance duration guidelines applied. See 750 ILCS 5/504(b-1)(1)(B) (West 2016). Under those guidelines, the maintenance award should have terminated in May 2010. Respondent further maintains that although petitioner was the party seeking to deviate from the statutory maintenance duration guidelines, the trial court charged him with the burden "to show an absence of factors for a deviation from the durational guidelines." Respondent asserts that properly placing the burden of proof upon petitioner demonstrates that she failed to present any compelling reasons to deviate from the statutory maintenance duration guidelines based on either her physical condition or employability. Respondent therefore requests that we reverse the trial court's April 2, 2019, order, terminate petitioner's maintenance retroactive to the date he filed his petition, and order petitioner to reimburse him for the overpayment of maintenance since that date.

¶ 37    Petitioner responds that the trial court's denial of respondent's petition to terminate indefinite maintenance did not constitute an abuse of discretion. Petitioner asserts that respondent, as the party seeking modification of the maintenance award, had the burden of showing a substantial change in circumstances to merit a change in the duration of the award. According to petitioner, while respondent established a decrease in his income sufficient to reduce the amount

of the monthly maintenance award, he failed to establish a substantial change in circumstances warranting the modification or termination with respect to the duration of the maintenance award.

¶ 38    Maintenance may be modified or terminated by a court pursuant to section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)) only upon a showing of a "substantial change in circumstances." A "substantial change in circumstances" as required under section 510(a-5) means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed. *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 132. Where a modification has been sought more than once, the trial court is to consider only the facts that occurred since the last modification hearing and to modify the award only upon a substantial change in circumstances since that date. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198-99 (2011). It is well settled that the party seeking modification of maintenance has the burden of establishing that a substantial change in circumstances has occurred. *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14; *Shen*, 2015 IL App (1st) 130733, ¶ 132; *Anderson*, 409 Ill. App. 3d at 198; *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 309 (2002); *In re Marriage of Neuman*, 295 Ill. App. 3d 212, 214 (1998); *In re Marriage of Krupp*, 207 Ill. App. 3d 779, 790 (1990).

¶ 39    In determining whether to modify or terminate a maintenance award, a court considers the nine factors set forth in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2016)). Those factors are:

"(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

- 19 -

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5) (West 2016).

Section 510(a-5) further instructs that the court shall consider the applicable factors in section 504(a) of the Act (750 ILCS 5/504(a) (West 2016)). 750 ILCS 5/510(a-5) (West 2016). The section 504(a) factors are:

"(1) the income and property of each property, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or any parental responsibility arrangements and its effect on the party seeking employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences of the property division upon the respective economic circumstances of the parties;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2016).

¶ 40    A trial court's decision to modify or terminate a maintenance award will not be disturbed on appeal absent a clear abuse of discretion. *Anderson*, 409 Ill. App. 3d at 199. An abuse of discretion occurs only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the court. *In re Marriage of Johnson*, 2016

IL App (5th) 140479, ¶ 93.

¶ 41    As the foregoing authority makes abundantly clear, it is the party seeking the modification or termination of a maintenance obligation who bears the burden of establishing a substantial change in circumstances sufficient to warrant the relief requested. *Bernay*, 2017 IL App (2d) 160583, ¶ 14; *Shen*, 2015 IL App (1st) 130733, ¶ 132; *Anderson*, 409 Ill. App. 3d at 198; *Turrell*, 335 Ill. App. 3d at 309; *Neuman*, 295 Ill. App. 3d at 214; *Krupp*, 207 Ill. App. 3d at 790. In this case, it was respondent who sought to modify or terminate his maintenance obligation. Thus, as the trial court correctly concluded, respondent bore the burden of proof as to any modification to the amount *or* duration of the maintenance obligation. That the trial court determined that respondent had established a substantial change in circumstances sufficient to warrant a reduction in the *amount* of respondent's maintenance obligation, however, is not necessarily determinative as to whether he also established a substantial change in circumstances sufficient to warrant a change in the *duration* of his maintenance obligation. Indeed, respondent does not cite any authority or present any reasoned argument for the proposition that a substantial change in circumstances warranting a reduction in the amount of maintenance inherently establishes a substantial change in circumstances relative to a spouse's need for indefinite maintenance.

¶ 42    Here, in deciding whether to reduce the *amount* of the maintenance obligation, the trial court focused on whether respondent had established a substantial change in circumstances as to his ability to pay maintenance. *Carstens*, 2018 IL App (2d) 170183, ¶ 16. The court concluded that respondent had met his burden based principally upon his change in employment and the reduced salary in his new position. *Carstens*, 2018 IL App (2d) 170183, ¶ 16. In contrast, in deciding that respondent had not established a substantial change in circumstances sufficient to alter the duration of the maintenance obligation, the trial court on remand focused on petitioner's

needs and her ability to meet those needs in light of the statutory factors set forth in the Act. Ultimately, the trial court concluded that respondent had not met his burden of establishing a substantial change in circumstances sufficient to warrant the modification or termination of the award of indefinite maintenance. Specifically, the court determined that petitioner remains in need of indefinite maintenance based upon her poor health, lack of job skills, and the disparity of income and assets between the parties.

¶ 43    Based on our review of the record, we cannot say that the trial court's finding is arbitrary, fanciful, or unreasonable, or that no reasonable person would take the view adopted by the trial court. Judge Ukena awarded petitioner indefinite maintenance in his 2011 order. The factual findings in support of Judge Ukena's ruling indicate that petitioner had assets worth about $2.3 million and respondent had assets valued at $1.7 million, but the parties had vastly divergent present and future earning capacities. Judge Ukena also noted that petitioner sacrificed development of her career and education by staying at home to care for the parties' three children and helping advance respondent's career. Petitioner worked part time after the dissolution of marriage but left the position in 2008 due to back problems. And while the exact nature of petitioner's back problems was unclear, Judge Ukena noted that petitioner testified the condition limited her employability and that respondent agreed that the condition affected petitioner's ability on some level to earn income. Judge Ukena found that petitioner could not "live the lifestyle of the marriage" without maintenance.

¶ 44    Respondent presented no evidence at the hearings in 2017 or 2019 establishing a substantial change since 2011 in petitioner's health, employability, or financial condition that would warrant terminating his maintenance obligation. To the contrary, petitioner was eight years older and out of the work force for eight years longer. There was no evidence that she acquired any job skills

between 2011 and 2019. Petitioner testified that her back condition had worsened with age and that while no doctor has imposed any job restrictions based on her health status, her back problems continued to prevent her from seeking gainful employment. Petitioner testified that her monthly expenses exceeded her income, requiring her to invade her asset accounts to make up for the shortfall. The evidence shows that the value of petitioner's assets has steadily decreased from $2.3 million in 2011 to $2.1 million in 2016 to $1.8 million in 2017 to $1.5 million in 2019. In contrast, although no evidence was presented as to the value of respondent's assets as of 2019, the record demonstrates that between 2011 and 2017 the value of respondent's assets had increased from $1.7 million to $2.1 million.

¶ 45    Moreover, while the trial court found that respondent did establish a substantial change in his own financial circumstances that warranted a reduction in the amount of his maintenance obligation, respondent does not, as noted above, cite any authority or present any reasoned argument for the proposition that a substantial change in circumstances warranting a reduction in the amount of maintenance inherently establishes a substantial change in circumstances relative to a spouse's need for indefinite maintenance. Indeed, even though respondent's change in employment resulted in a decrease in his salary, there is still a large disparity in the parties' monthly gross income. Neither party provided the trial court with updated financial affidavits at the 2019 hearing. However, at the 2017 hearing, respondent testified that in his position at The Private Bank, he earns $15,500 per month, consisting of a base salary of $175,000 plus an additional $11,000 per year as an offset for his country club dues. In addition, respondent has the opportunity for a bonus of up to 40% of his base salary. Petitioner testified at the 2017 hearing that her monthly income totaled $7268, consisting of $2268 in dividend income and $5000 in maintenance from respondent. Pursuant to the trial court's February 2017 order, however,

respondent's monthly maintenance obligation was reduced to $4196.40. Thus, petitioner's monthly income decreased to $6464.40 ($2268 plus $4196.40). After paying his maintenance obligation, respondent is left with $11,303.60 ($15,500 minus $4196.40) per month compared to petitioner's $6464.40 per month. Thus, the income disparity between the parties is $4839.20 per month in favor of respondent without accounting for any bonus paid to him. For these reasons, we agree that the evidence in this case did not reasonably demonstrate a substantial change in circumstances sufficient to warrant the termination of petitioner's indefinite maintenance. As such, the trial court did not abuse its discretion in denying respondent's motion to terminate his maintenance obligation.

¶ 46    As noted above, after determining that respondent failed to establish a substantial change in circumstances that would warrant the termination of the maintenance award, the trial court cited reasons why it deviated from the statutory duration guidelines. The trial court did so in accordance with our remand instructions. However, we conclude that such an exercise was unnecessary given the trial court's finding that respondent failed to establish a substantial change in circumstances warranting a modification of the duration of the maintenance obligation. As section 510(a-5) makes clear, "[a]n order for maintenance may be modified or terminated *only* upon a showing of a substantial change in circumstances." (Emphasis added.) 750 ILCS 5/510(a-5) (West 2016). Since respondent failed to meet his burden of establishing a substantial change in circumstances relative to the duration of the maintenance award, any further analysis was unnecessary. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 827 (1994).

¶ 47                                III.  CONCLUSION

¶ 48    For the reasons set forth above, we affirm the judgment of the circuit court of Lake County denying respondent's petition to modify the duration of his maintenance obligation.

¶ 49    Affirmed.