2023 IL App (1st) 211380-U
No. 1-21-1380

FIRST DIVISION
November 6, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JULIE LYNCH, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Domestic Relations |
| Petitioner-Appellee, | ) | Division |
| | ) | |
| v. | ) | No. 2019 D 447 |
| | ) | |
| JOHN ZUMMO, | ) | The Honorable |
| | ) | Diana Rosario, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's entry of a Judgment for Dissolution of Marriage in the parties' underlying divorce matter. The parties entered into a settlement agreement that was incorporated into a final divorce judgment by the court, despite Appellant's objections that the language of the judgment differed from the settlement agreement and that the provisions of the settlement regarding his spousal maintenance and child support obligations were not enforceable. Appellant failed to sufficiently develop his present arguments before the circuit court, despite having had ample notice of the contents of Appellee's draft marital settlement agreement, which was adopted by the court in rendering its judgment. We therefore find that he has forfeited a number of his contentions, and that the remainder fails to establish manifest error on the part of the circuit court.

¶ 2    In the underlying dissolution of marriage matter, the circuit court denied Respondent-Appellant John Zummo's motion to dismiss Petitioner-Appellee Julie Lynch's motion for declaratory judgment seeking a declaration that the parties' Statement of Settlement Agreement ("Agreement") was valid and enforceable on the parties and a judgment of a dissolution of marriage consistent with the terms of the Agreement. The court granted Lynch's motion for declaratory judgment and entered a Judgment for Dissolution of Marriage. Zummo appeals from the order denying his motion to dismiss.

¶ 3                                    BACKGROUND

¶ 4    Lynch filed for divorce from Zummo on January 14, 2019. On March 31, 2021, the circuit court set the matter for trial commencing on June 28, 2021. On May 9, 2021, without the involvement of counsel,[1] the parties jointly executed a Statement of Settlement Agreement. The Agreement sets out that the parties have agreed to settle "certain issues involved in their divorce proceedings," and includes a total of 14 listed items that the parties agreed upon, including provisions for the division of marital assets and marital debts, Zummo's support payments to Lynch and their two sons, and the parties' intent to execute a Parenting Allocation Judgment Agreement ("Parenting Agreement.") The Agreement concludes with a provision stating:

> This agreement is intended to resolve all of the issues regarding the division of marital assets, marital debts and the Parenting Agreement. The parties agree that these terms will be incorporated into a Martial Settlement Agreement (MSA) to be drafted and agreed upon by the parties' respective counsel. Upon execution of the MSA by both parties, it shall be incorporated into an agreed Court order.

The provision in the Agreement that discusses support for the parties' children states that, until the later of the children turning 18 or graduating high school, Zummo would pay support in

---

[1] The parties note that Zummo's counsel was in the process of withdrawing from his representation around this time; his counsel was granted leave to withdraw on May 12, 2021, and Zummo, who is an attorney, filed his *pro se* appearance on May 10, 2021. The parties also note that while counsel for the respective parties was not involved in drafting the Agreement, Lynch's father, who is also an attorney, assisted in the process.

amounts established "through the use of the Illinois statutory calculations as agreed to by counsel for John Zummo and counsel for Julie Lynch." If counsel could not agree, the provision states that the matter would be submitted to the court for resolution. The provision regarding Zummo's spousal support obligations to Lynch includes the same language regarding the use of statutory calculations, and that any disagreements would be brought before the court as well.

¶ 5     The parties also negotiated an Agreed Allocation Judgment and Parenting Plan ("Parenting Plan") that resolved the issue of parental responsibility over their two children. The Parenting Plan was signed by the parties on May 9, 2021 and entered on June 3, 2021.

¶ 6     The parties state that further negotiations were stalled by the parties' disagreement over Zummo's maintenance obligations. The Agreement states that the statutory formula would be applied to both Zummo's base income and to any year-end bonuses that he received. After the parties signed the Agreement, Zummo requested that a cap be applied to the amount of support that would come from any bonus income he received. Lynch disagreed, arguing that they were both bound to the terms of the Agreement, which did not mention an income cap, and that Zummo had personally acknowledged that the Agreement was a complete and final agreement when he stated as much before the court during a hearing on May 11, 2021.

¶ 7     Lynch filed a Motion for Declaratory Judgment on June 23, 2021, seeking a declaration from the court that the May 9, 2021 Agreement was valid, enforceable, and binding upon the parties, as well as the entry of a Judgment for Dissolution of Marriage consistent with the terms of the Agreement.

¶ 8     Zummo moved to strike and dismiss Lynch's motion, arguing that a declaratory judgment could not be used to have the court add or modify terms of the Agreement or convert it to a Judgment for Dissolution of Marriage. He alleged that Lynch was asking the court to define bonus

income in the manner that she preferred, when the language of the Agreement did not provide for any definition of this term. He further claimed that the court could not enter the requested declaratory judgment because it would not terminate the dissolution proceedings, due to the fact that the parties would still have to submit disputes over child support and spousal maintenance to the court.

¶ 9 At the hearing on both parties' motions, Zummo, through counsel, admitted that the Agreement was "valid and binding;" however, he characterized it as "nothing more than an agreement to reach an agreement," and argued that it was not a binding settlement agreement pursuant to Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act ("Act") because it did not resolve all issues of the divorce, and therefore could be converted into a divorce judgment. Therefore, he claimed that a motion for declaratory judgment, which asks the court to declare whether an agreement is valid, could not be used to ask the court to also enter the Agreement into a Judgment for Dissolution of Marriage consistent with the terms of the Agreement. Specifically, he again noted the undefined amounts of child support and spousal maintenance, alleging that there was no "meeting of the minds" on those issues. Zummo further claimed that the draft Marriage Settlement Agreement that Lynch attached to her motion "expanded and materially modified" the terms of the Agreement in several ways, including in the language used to describe Zummo's future bonus income, as additional support for his argument that she was asking the court to enter a final judgment with terms to which the parties did not agree.

¶ 10 The circuit court denied Zummo's motion to strike or dismiss and granted Lynch's motion for declaratory judgment. Reviewing the Agreement, the court found that the parties voluntarily entered into the Agreement with the intent to eventually incorporate its terms into a Marital

Settlement Agreement. The court further found that the terms of the Agreement were detailed, clear, and unambiguous, including the child support and spousal maintenance provisions that were particularly at issue in the parties' disagreement. The court noted that Zummo's counsel had admitted that the Agreement was valid and enforceable, and determined that Zummo was attempting to make changes to the support provisions of the Agreement. On July 15, 2021, the court ruled that the Agreement was a valid and enforceable settlement agreement pursuant to Section 502(a) of the Act, and ordered the parties to incorporate the Agreement into a marital settlement agreement to present to the court at a prove-up date of August 6, 2021.

¶ 11    At the prove-up hearing, Lynch presented a First Draft Judgment before the court and asked that it be entered. She was questioned about various provisions in the draft that were not found in the Agreement, and agreed to strike some of those provisions if Zummo, who did not appear at the hearing and who had not submitted any formal objection to these provisions, did not agree to them. Zummo's counsel stated that he objected to the entry of any judgment that deviated from the Agreement. The circuit court found that the draft judgment was "reasonable and not unconscionable" and that it conformed to the Agreement. On September 28, 2021, the circuit court entered a Judgment of Dissolution of Marriage ("Judgment") that omitted the provisions in Lynch's First Draft Judgment that she agreed to strike during the prove-up hearing but otherwise conformed to her proposed draft.

¶ 12    Zummo now appeals from: (1) the July 15, 2021 order denying his Section 615 motion to strike or dismiss Lynch's motion for declaratory judgment and granting Lynch's aforementioned motion; and (2) the September 28, 2021 Judgment of Dissolution of Marriage. He argues on appeal that the circuit court erred in denying his motion to dismiss and granting Lynch's motion for declaratory judgment because Lynch failed to allege sufficient facts showing she was entitled to

her requested relief, and because the court entered a judgment for dissolution of marriage that (1) materially deviated from the Agreement; (2) violated the Act regarding maintenance and child support; and (3) contained several ambiguous terms. He asks us to vacate the July 15, 2021 order both as to the denial of his motion to dismiss and the granting of Lynch's motion for declaratory judgment. He further asks us to vacate the September 28, 2021 Judgment except as to the parties' divorce and remand for resolution of the Agreement's allegedly ambiguous terms and entry of a marital settlement agreement consistent with the Agreement, or, in the alternative, to resolve the alleged ambiguities in Zummo's favor or remand those issues to the circuit court for clarification.

¶ 13    Lynch argues that we lack jurisdiction to hear an appeal of the July 15, 2021 order because Zummo improperly appeals from the denial of a motion to dismiss, an unappealable interlocutory order. She further argues that, if jurisdiction is properly established, the circuit court's order should be affirmed because the parties had voluntarily entered into a complete, final, valid, and enforceable settlement agreement and were now bound by its terms. She states in support of her argument that even though there were certain allegedly non-material terms and mechanisms of executing the Agreement, there was nonetheless the requisite "meeting of the minds" between the parties, and a contract need not provide for every possible collateral matter or contingency in order to be enforceable.

¶ 14                                  ANALYSIS

¶ 15                         <u>Jurisdiction on Appeal</u>

¶ 16    As an initial matter, Zummo appeals from an order denying his motion to dismiss, as well as a final order disposing of the underlying divorce proceedings. In such situations, we generally will not review the denial of a motion to dismiss because any error made in such order merges into the final judgment, and the appeal is taken from that final judgment. *See Ovnik v. Podolsky*, 2017

IL App (1st) 162987, ¶¶ 19-21. Zummo admits in his brief that denials of motions to dismiss are not ordinarily appealable, and he does not present a sufficient argument for deviating from this rule in the present matter. Therefore, we will discuss the circuit court's findings regarding the Agreement to the extent that they relate to the court's September 28, 2021 entry of the Judgment.

¶ 17    Zummo specifically points to three alleged ways in which the circuit court erred by entering the Judgment. He claims that the Judgment (1) materially deviates from the Agreement without making findings of unconscionability pursuant to Section 502 of the Act and without affording Zummo a hearing on those issues; (2) orders Zummo to pay child support and spousal maintenance in amounts that violated the statutory guidelines in Sections 504 and 505 of the Act and created the potential for a windfall to Lynch; and (3) contains ambiguous terms.

¶ 18                                  Standard of Review

¶ 19    A marital settlement agreement is a contract, reviewed according to the principles of contract law, and its terms are enforceable as contract terms pursuant to the Act. *See In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 71; 750 ILCS 5/502(e) (West 2022). It requires an offer and acceptance, a meeting of the minds on the terms of the agreement, and material terms that are definite and certain, meaning that the court is able to ascertain what the parties have agreed to do. *Bruzas v. Richardson*, 408 Ill.App.3d 98, 105 (1st Dist. 2011). A contract that leaves essential terms of the agreement to future negotiation is not binding. *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 28. However, a contract need not provide for "every collateral matter or every possible future contingency which might arise" in order to be enforceable. *Id.* (quoting Morey v. Hoffman, 12 Ill.2d 125, 130–31 (1957)). The primary aim in interpreting a contract is to "give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms." *Lyman*, 2015 IL App (1st) 132832 at ¶ 71 (quoting

*Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill.App.3d 632, 636–37 (2008)). A trial court's determination of whether a valid and enforceable marital settlement agreement occurred will not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 25; *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 48.

¶ 20    Our courts have found settlement agreements to be enforceable in situations comparable to those that Zummo claims exist here. In *Haller*, the settlement agreement stated that spousal maintenance would terminate upon the occurrence of any of the statutory circumstances; the court rejected the appellant's argument that by failing to specifically list those statutory factors, the agreement was incomplete and unenforceable. *Haller*, 2012 IL App (5th) 110478 at ¶¶ 25-28. In *In re Marriage of Wig*, the court found a marriage settlement agreement to be enforceable where it clearly and unambiguously provided for the method of calculating initial spousal without consideration for a specific statutory method for setting maintenance. *In re Marriage of Wig*, 2020 IL App (2d) 190929, ¶¶ 23-25. In reviewing the marital settlement agreement in *Wig*, the court explained that, "What remained undetermined [when the parties executed their agreement] was the dollar amount of monthly maintenance that petitioner would receive based on the parties' income. That calculation was not a contingency that had to occur before respondent became entitled to maintenance." *Id.* at ¶ 26. And in *Baecker*, the court upheld a settlement agreement that left blank certain terms regarding the sale of a car, where it was clear that the parties had discussed and agreed to the distribution of proceeds and to set a sale price later. *Baecker*, 2012 IL App (3d) 110660 at ¶¶ 37-38.

¶ 21                          Whether the Agreement Was Enforceable

¶ 22    Zummo admitted to the circuit court that the parties both entered into the Agreement and that it was valid and binding,[2] although he characterized it as merely an "agreement to reach an agreement." He further states that he does not dispute that the unambiguous terms of the Agreement are binding on the parties. He makes no claims that there was no meeting of the minds regarding the terms of the agreement, and specifically does not claim that the parties ever agreed to setting a cap on his bonus income for calculating his support obligations. However, he contends that Lynch asked the circuit court to alter the terms of the Agreement when it entered the Judgment, and that the circuit court did so. He bases this part of his argument on the law of contract construction and on Section 502 of the Act.

¶ 23    We need not delve into Zummo's discussion of how a court must construe a contract containing ambiguous terms, because we agree with the circuit court that the terms of the Agreement are clear and unambiguous from the face of the contract, including the provisions regarding spousal maintenance and child support. We similarly do not find merit in Zummo's contention that these provisions do not establish the amounts the parties agreed that Zummo would pay going forward. He does not provide any authority stating that a settlement agreement pursuant to Section 502 must list specific amounts of support obligations in order for that settlement to be incorporated into a final judgment, or that a lack of definite amounts constitutes an ambiguity in the agreement. We agree with the circuit court that by providing for the statutory method of calculating support obligations, the Agreement is clear, and does not leave any terms up to any contingency or future action.

---

[2] It is unclear what distinction Zummo attempts to draw in admitting that the Agreement is valid and binding, but not enforceable as to the terms he alleges are ambiguous or insufficiently defined. However, we accept his position that the Agreement is valid, as there is no dispute on this issue on appeal.

¶ 24    The fact that the amounts Zummo will have to pay each year were not calculated prior to the parties' executing the Agreement does not constitute an agreement to reach a later agreement. No future agreement is necessary—the parties already bound themselves to using the statutory calculation method, as stated in the Agreement. As Zummo's future annual income for each year that he will be making these payments could not be known at the time that the parties entered into the Agreement, it would be unreasonable to require a specific sum be listed for each year. Furthermore, the fact that the parties did not know how Zummo's income might change in the coming years does not mean the Agreement was contingent on future events. We do not find that the Agreement was unenforceable because it required the application of the statutory formula to Zummo's future income.

¶ 25    Zummo also seemingly attempts to use the fact that the Agreement—and therefore the Judgment—includes provisions that the parties will submit disputes to the circuit court to argue that the underlying divorce proceeding is never actually terminated, because the parties could go back before the court at any time in the future to argue over the support calculations. He does not present any basis for such a contention, and we decline to find that the Agreement could not be incorporated into a final judgment based on these provisions. Indeed, the fact that the parties agreed to calculate Zummo's future support obligations on an annual basis rather than list out specific amounts that he will have to pay in both child support and spousal maintenance decreases the possibility that the post-divorce litigation will continue, if Zummo's income were to change significantly in the future.

¶ 26    Zummo relatedly argues that because the Agreement does not resolve all issues that needed to be addressed in the divorce proceedings, it could not be incorporated into a final judgment. His basis for claiming that the Agreement does not resolve all material matters is that it states that it

resolves "certain issues" in the divorce proceedings, and that it provides that the parties will submit disputes regarding the amounts of Zummo's child support and spousal maintenance obligations to the court for resolution. He claims that, pursuant to the laws of contract, the Agreement was not complete and enforceable because essential terms were missing, and that the parties indicated their intent to only resolve certain—and not all—issues via the Agreement. *See Haller*, 2012 IL App (5th) 110478 at ¶ 26. We have already addressed the fact that the Agreement does include clear, detailed, and binding provisions for determining Zummo's child support and spousal maintenance obligations. Despite Zummo's references to other sections of the Agreement, we find no clearer indication of the parties' intent regarding child support and spousal maintenance than those paragraphs that specifically lay out the terms to which the parties agreed regarding those matters. *See Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007) (To determine the parties' intent, the court begins with the text of the contract, as it is the best indication of that intent.)

¶ 27    Finally, we note that Zummo initiated the argument over the Agreement before the circuit court because he wished to, in essence, add a term to the Agreement that it did not contain—the cap on his bonus income. Zummo does not claim that he believed at any point up to signing the Agreement that his bonus income would be capped for the purposes of calculating his support obligations. As Zummo repeatedly states, a court cannot modify a contract by inserting new terms to which the parties did not agree.

¶ 28                    Whether the Circuit Court Modified the Agreement's Terms

¶ 29    Having determined that the Agreement contained valid and enforceable terms regarding child support and spousal maintenance, we next address Zummo's claim that the circuit court, in entering the final Judgment, impermissibly modified the terms of the Agreement. *See Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill.App.3d 472, 480 (1st Dist. 2002) (Court

cannot not add terms to the agreement when the agreement is silent as to those terms, especially where the added language would clearly change the plain meaning of the agreement.) Zummo devotes approximately five pages of his brief to listing what he claims to be material differences between the Agreement and the Judgment.

¶ 30    The record shows that Zummo's counsel objected to the entry of "any proposed judgment that does not comport with the [Agreement]" at the prove-up hearing, and Lynch was questioned on various provisions in her draft that Zummo now claims were material changes from the Agreement, that were impermissibly approved by the circuit court. Lynch agreed to strike certain provisions that she admitted were not in the Agreement, and the circuit court's Judgment excluded those portions as well. Zummo now points to this section of the hearing's transcript as proof that the circuit court added terms to the Agreement by incorporating these provisions into its Judgment.

¶ 31    At the hearing, Zummo's counsel conducted a lengthy comparison of the Agreement and Lynch's proposed draft, identifying several instances where the two differed. As we have noted, Lynch agreed to strike many of these provisions from her draft during the hearing, and the circuit court did not incorporate those into its final Judgment. As to the remaining provisions, Zummo does not provide an argument for why they ought not to have been included in the Judgment, beyond stating that this language is not found in the Agreement. However, we will review the respective portions of the Agreement and the Judgment that are the most relevant to the issues on appeal—the sections discussing spousal maintenance. The Agreement states:

> 8) John Zummo agrees to pay Julie Lynch spousal support from February 1, 2021 for a period of 11 years. Said payment amounts shall be established through the use of the Illinois statutory calculations as agreed to by counsel for John Zummo and counsel for Julie Lynch. Using the same formula, counsel shall also calculate a percentage of any year-end bonus awarded to John pursuant to his employment contract. If counsel are unable to reach agreement on either the amounts or bonus percentage, the issue will be submitted in writing to the Court for resolution.

Article VI of the Judgment states:

> 6.2. Maintenance to Wife:
>
> \*\*\*
>
> c) Monthly Maintenance to Julie: John shall pay modifiable, non-taxable guideline maintenance to Julie.
>
> > i. Maintenance Based on Income from current base income: John's current gross annual base salary from his employment at Gutnicki, LLP is $225,000 annually. John shall pay to Julie guideline maintenance, in part, based on his base salary from employment and Julie's income from employment. The Court finds that given John's current base salary from employment and Julie's gross annual income of approximately $74,000, guideline monthly maintenance payment on current base income due and owing to Julie is $2,081 per month (net) starting July 15, 2021 and shall continue for a term of eleven years ending after the last payment being made by John to Julie on February 1, 2032.
> >
> > ii) Maintenance for February, March, April, May, and June: Also starting July 15, 2021 and continuing thereafter for twelve months, John shall pay to Julie $867 a month that represents retroactive maintenance payments for the months of February, March, April, May, and June of 2021.
> >
> > iii) Additional Maintenance: Pursuant to his employment agreement John may be eligible for an annual bonus/partner distribution/revenue split on collections each year which will be payable in January for the prior year. Within seven days of John receiving any bonus partner distribution/revenue split on collections or other income in addition to his base salary, the parties shall perform a true-up calculation to determine the amount of additional maintenance over and above the base monthly amount to be paid by John to Julie for the prior calendar year in accordance with the terms and conditions set forth below.

¶ 32    We agree with Zummo that the two documents, both here and elsewhere, are not identical. We draw specific attention to the application of Zummo's bonus payments in calculating his maintenance obligation—the Agreement refers only to "year-end bonuses" while the Judgment, adopting Lynch's draft, uses the potentially more expansive "annual bonus/partner distribution/revenue split on collections." However, neither document mentions a cap on any of these amounts.

¶ 33    More troublingly, the record indicates that Zummo had an opportunity to develop and present before the court an argument that Lynch's proposed draft marital settlement agreement materially differed from what the parties agreed to, and/or to submit a competing draft agreement that he believed better comported with the Agreement. Zummo's counsel was aware that the circuit court had found the Agreement to be valid and enforceable in its July 15, 2021 ruling on Lynch's motion for declaratory judgment; the court set an August 6, 2021 prove-up hearing date on the marital settlement agreement in that same order. Zummo's counsel was also aware that on August 6, 2021, the court continued the prove-up hearing, specifically to give the parties additional time to resolve any outstanding issues regarding the marital settlement agreement. Zummo's counsel appeared on the new prove-up hearing date of September 28, 2021, at which Lynch both presented her proposed draft and appeared in person to testify. Zummo did neither. Instead, his counsel relied on identifying to the court the differences between Lynch's draft and the Agreement, and stood on his objection to the entry of any final judgment that differed from the Agreement.

¶ 34    As previously mentioned, Lynch agreed to strike several portions of her draft, but the court allowed other portions referenced by Zummo's counsel to remain in what the court ultimately adopted into the Judgment. Zummo was not present to testify as to which portions were materially different and why, or provide any countervailing argument for why the court shouldn't enter Lynch's draft, as modified during the prove-up hearing.

¶ 35    On appeal, Zummo does refer to his lack of opportunity to present any evidence at the hearing, but only in the context of claiming that the court should have conducted an unconscionability hearing if it were modifying the Agreement due to unconscionability. Zummo does not claim that the Agreement was unconscionable for any reason; rather, he repeatedly acknowledges that it is a valid agreement that he willingly and knowingly entered into. Regarding

the contents of Lynch's proposed draft, both Lynch and Zummo mention on appeal that both sides were engaged in discussions over converting the Agreement into a draft marital settlement agreement to submit to the circuit court, before negotiations broke down and Lynch filed her motion for declaratory judgment. This means that Zummo and/or counsel had some knowledge of what became Lynch's proposed draft as far back as May or June 2021. Lynch's motion for declaratory judgment also mentions that her counsel sent the final draft marital settlement agreement to Zummo on June 14, 2021. Furthermore, Zummo's counsel appeared to be sufficiently apprised of the contents of the draft to be able to question Lynch on all of the alleged discrepancies at the prove-up hearing. Therefore, despite validly noting the existence of differences between the Agreement and both the draft and final marital settlement agreements, Zummo does not provide any explanation for his failure to adequately pursue his arguments before the circuit court.

¶ 36    Zummo also cites to the decision in *Herhold* to argue that the circuit court in the present matter not only improperly entered a divorce judgment that altered the terms of the Agreement, but that Zummo was not afforded the opportunity to present evidence that Lynch's draft judgment differed from the terms the parties agreed to in the Agreement. *Herhold v. Herhold*, 123 Ill.App.2d 293 (1st Dist. 1970). In *Herhold*, the circuit court entered a divorce decree drafted by the wife, over the husband's objection that the decree did not conform to one of the terms of the parties' property settlement. *Id*. at 294-95. The court heard testimony from both parties, and the husband tendered a competing draft decree. *Id*. The decree was vacated on appeal, with instructions to the circuit court to substitute the husband's proposed version of the contested provision. *Id*. at 298.

¶ 37    For the reasons mentioned above, we find that Zummo had every opportunity to present the sort of countervailing evidence he references in his reliance on *Herhold*. We cannot make an appellant's argument for him where he has failed to support his claims. *See U.S. Bank Trust Nat.*

*Ass'n v. Junior*, 2016 IL App (1st) 152109, ¶ 20 ("An appellant cannot expect this court to develop arguments and research the issues on the appellant's behalf.") We similarly do not expect the circuit court to have developed his arguments for him. Therefore, we find that the circuit court did not commit manifest error in entering the Judgment.

¶ 38                    Zummo's Arguments Based on Violations of the Act

¶ 39    Zummo next raises various arguments alleging that the circuit court violated certain sections of the Act, by: (1) failing to first hold a hearing on and make a finding of unconscionability that would warrant its entry of a Judgment that deviated from the Agreement; (2) setting child support awards that deviate from the Agreement and the Act's guidelines, without making a finding justifying a deviation from the guidelines; (3) ordering an alleged maintenance true-up that improperly benefitted Lynch; and (4) failing to cap Zummo's maintenance obligations. Zummo raises these arguments for the first time on appeal, and they are therefore forfeited. *See Smith v. Airoom, Inc.*, 114 Ill.2d 209, 229 (1986) (Matters not presented before the trial court may not be raised for the first time on appeal.)

¶ 40                    Whether the Judgment Contains Ambiguous Terms

¶ 41    Zummo concludes with an alternative plea stating that if we decline to vacate the Judgment, its ambiguous provisions should either be construed against Lynch or remanded to the circuit court for clarification. He lists various alleged ambiguities with which he takes issue. This argument is forfeited for being raised for the first time on appeal, as we discussed above. Zummo had the opportunity to develop all of his objections to the Agreement, Lynch's proposed draft judgment, and the circuit court's Judgment. To the extent that he has preserved any of his contentions for appeal, he merely listed several alleged inconsistencies, with no supporting argument or evidence. Our review of the record leads us to conclude that Zummo presented insufficient grounds for the

circuit court's entry of the Judgment to have been in error. We therefore find that the circuit court's entry of the Judgment was not against the manifest weight of the evidence.

¶ 42                                        CONCLUSION

¶ 43     For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 44     Affirmed.